NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12111
SJC-12177


 CITY OF REVERE & others[1]  vs.  MASSACHUSETTS GAMING COMMISSION.



        Suffolk.     December 5, 2016. - March 10, 2017.

   Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
                            Budd, JJ.



Gaming.  License.  Administrative Law, Judicial review,
     Intervention.  Practice, Civil, Action in nature of
     certiorari, Review of administrative action, Intervention,
     Interlocutory appeal.  Jurisdiction, Judicial review of
     administrative action.




     Civil action commenced in the Superior Court Department on
October 16, 2014.

     A motion to dismiss the intervener's complaint and a motion
to dismiss the plaintiffs' second amended complaint were heard
by Janet L. Sanders, J.

     The Supreme Judicial Court granted an application for
direct appellate review, and following the order by Sanders, J.,
for entry of final judgment, the Supreme Judicial Court granted
a second application for direct appellate review.

---

     [1] International Brotherhood of Electrical Workers Local 103,
Louis Ciarlone, Ronald Hills, Debra A. Santa Anna, and Elaine
Leto; Mohegan Sun Massachusetts, LLC, intervener.

Kenneth S. Leonetti & Christopher E. Hart (Michael Hoven also present) for the intervener.
Patricia L. Davidson for city of Revere.
David S. Mackey (Mina S. Makarious & Melissa C. Allison also present) for the defendant.

BOTSFORD, J.  This case concerns the process by which the Massachusetts Gaming Commission (commission) awarded a gaming license in late 2014 to Wynn MA, LLC (Wynn).  The plaintiffs -- an unsuccessful applicant for the license, the city that would have hosted the unsuccessful applicant, a labor union, and individual citizens -- filed two complaints in the Superior Court that alleged numerous defects in the commission's process for awarding the license to Wynn.  The commission filed motions to dismiss both complaints.  A judge in the Superior Court allowed the motions on all but one count of one of the complaints, permitting only the unsuccessful applicant's claim for certiorari review to survive.  The parties now appeal various aspects of the judge's decision.  For the reasons discussed below, we affirm in part, reverse in part, and remand the case for further proceedings.

Background.  1.  Gaming in Massachusetts.  In November, 2011, the Legislature enacted St. 2011, c. 194, An Act

establishing expanded gaming in the Commonwealth (act).[2] Section 16 of the act created the gaming commission and set forth standards under which applicants could obtain a license from the commission to operate a gaming establishment. See G. L. c. 23K, inserted by St. 2011, c. 194, § 16. The act describes two types of licenses. The one at issue here, a "category 1 license," permits the operation of "a gaming establishment with table games and slot machines." See G. L. c. 23K, § 2. The act authorizes the commission to issue up to one such license in "region A," which encompasses the counties of Suffolk, Middlesex, Essex, Norfolk, and Worcester. G. L. c. 23K, § 19 (a) (1).

The license application process relevant to this case unfolded in two phases, as contemplated by the commission's regulations. See 205 Code Mass. Regs. § 110.01 (2012). Applicants were required first to demonstrate their suitability and eligibility based on criteria described in G. L. c. 23K, §§ 12 and 15. Only those applicants deemed suitable by the commission proceeded to the second phase, in which the commission considered the applicant's entire application. See G. L. c. 23K, § 12 (c). In this phase, the commission evaluated

---

[2] The court's opinion in Abdow v. Attorney Gen., 468 Mass. 478, 480-482 (2014), sets forth a more complete description of St. 2011, c. 194 (act).

the applicants based on nineteen statutory criteria and issued a corresponding statement of findings. See G. L. c. 23K, § 18. The criteria required the commission to evaluate how well the applicants would advance a broad array of objectives, ranging from promoting local businesses and using sustainable development principles to maximizing revenues received by the Commonwealth and mitigating the potential impacts of gaming on host and surrounding communities. See id.

Ultimately, the license application process challenged in this case came down to a choice between two applicants -- Wynn, which proposed a casino in Everett, and Mohegan Sun Massachusetts, LLC (Mohegan Sun), which proposed a casino in Revere. In September, 2014, the commission awarded the license to Wynn. In November, 2014, the commission issued a thirty-six-page written determination, with accompanying exhibits, explaining its evaluation of the competing applications. This determination formally awarded the license to Wynn and denied the application of Mohegan Sun.

2. Alleged defects in the licensing process. In October, 2014, the city of Revere (city), the International Brotherhood of Electrical Workers Local 103 (union), and four union members (individual plaintiffs) brought suit in the Superior Court against the commission. In early 2015, these plaintiffs filed a second amended complaint. At around the same time, Mohegan Sun

filed a motion to intervene and a complaint in intervention. The motion to intervene was allowed without opposition.

The second amended complaint and Mohegan Sun's complaint in intervention contain four virtually identical counts. In the first two counts, Mohegan Sun, the city, and the union seek review and reversal of the commission's award of the gaming license to Wynn under G. L. c. 30A, § 14 (count I), and under G. L. c. 249, § 4 (count II). Concerning counts I and II, they allege, for example, that the commission in its agreement to award the license to Wynn failed to include several commitments or conditions required by the act relating to environmental requirements, neighboring community obligations and investor suitability; failed to give proper weight to host and surrounding community agreements, adopted an improper arbitration regulation, failed to properly consider various mitigation plans, and accepted incorrect employment estimates; treated Wynn and Mohegan Sun differently, with inequitable results for Mohegan Sun, in part by using differing grading procedures, inconsistently applying the statutory requirement that license applicants have no affiliates or close associates who would not qualify for a license, and engaging in improper ex parte communications with Wynn; and failed properly to take into account the suitability (in particular, the criminal history) of certain individuals allegedly involved in the transaction in

which Wynn purchased the land for its casino. They also allege that Wynn failed properly to disclose its involvement in an ongoing criminal investigation as required by the act.

In count III of the respective complaints, Mohegan Sun, the city, and the union seek a declaratory judgment pursuant to G. L. c. 231A, § 1, to the effect that the act is unconstitutional as applied and that, to the extent the act precludes judicial review, it violates the constitutional guarantee of due process and also separation of powers principles. In count IV, the plaintiffs allege that the commission's regulations implementing the act are ultra vires and unconstitutional.

Finally, in the second amended complaint only, the individual plaintiffs seek relief under the open meeting law, G. L. c. 30A, § 23 (count V). Essentially, count V alleges that a quorum of the commission engaged in deliberations that should have taken place in a public meeting, including during the recess of a public meeting and on other occasions. Additional allegations in the complaints are discussed where relevant infra.

3. Procedural history. In July, 2015, the commission moved to dismiss both complaints. In December, 2015, the motion judge allowed the motion to dismiss the second amended complaint. The judge ruled that counts I through IV of that

complaint must be dismissed under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), for lack of standing because the city and the union are not within the "zone of interests" that the act arguably protects.  She also ruled that the individual plaintiffs' allegations regarding the open meeting law failed to rise above the speculative level, and therefore could not survive a motion to dismiss under Mass. R. Civ. P. 12 (b) (6) for failure to state a claim.

With respect to Mohegan Sun's complaint in intervention, the motion judge allowed the motion to dismiss count I, ruling that § 17 (g) of the act expressly precludes judicial review under G. L. c. 30A, § 14.  However, she denied the motion with respect to count II, concluding that Mohegan Sun satisfied the prerequisites for certiorari review.  Because this ruling permitted a form of judicial review of the commission's region A decision, the judge dismissed as moot counts III and IV of Mohegan Sun's complaint seeking declaratory relief.

The commission filed a notice of appeal with respect to Mohegan Sun's surviving count II, claiming that the doctrine of present execution authorizes interlocutory review.  After entry of final judgment the plaintiffs filed their own notice of appeal.  This court allowed applications for direct appellate review of both the commission's and the plaintiffs' appeals.

Standard of review. This court reviews orders on motions to dismiss de novo. Shapiro v. Worcester, 464 Mass. 261, 266 (2013). For purposes of that review, we accept as true the facts alleged in the plaintiffs' complaints and any exhibits attached thereto, drawing all reasonable inferences in the plaintiffs' favor. Burbank Apartments Tenant Ass'n v. Kargman, 474 Mass. 107, 116 (2016).

Discussion. The parties' appeals raise several issues, which we address in the following order. First, we consider the claims raised by Mohegan Sun and the commission concerning the motion judge's dismissal of Mohegan Sun's claim under G. L. c. 30A, § 14, and the judge's determination that certiorari review of the commission's decision is available. We also review, briefly, the judge's dismissal of Mohegan Sun's claims for declaratory relief in counts III and IV of the complaint. We next address the claims of the city and the union that the judge erred in ruling that they lacked standing to challenge the commission's decision. Finally, we consider the open meeting law claim of the individual plaintiffs.

1. Claims of Mohegan Sun and the commission. a. Judicial review under G. L. c. 30A, § 14. General Laws c. 30A, § 14, provides for judicial review of an agency decision in an adjudicatory proceeding, "[e]xcept so far as any provision of law expressly precludes" it. G. L. c. 30A, § 14, first par.

Section 17 (g) of the act, in turn, provides that "[t]he commission shall have full discretion as to whether to issue a license. Applicants shall have no legal right or privilege to a gaming license and shall not be entitled to any further review if denied by the commission" (emphasis added). G. L. c. 23K, § 17 (g).

The motion judge concluded that Mohegan Sun's claim for relief under G. L. c. 30A, § 14, fails because G. L. c. 23K, § 17 (g) expressly precludes such review. Mohegan Sun argues that § 17 (g) is narrow in scope, barring review under G. L. c. 30A, § 14, of the commission's denial of Mohegan Sun's license application, but not of the commission's grant of a license to Wynn. We agree with the motion judge's reading of § 17 (g). Even if we assume, for purposes of argument, that the commission's licensing proceeding qualified as an "adjudicatory proceeding" within the meaning of G. L. c. 30A,[3] the language in

---

[3] The act is opaque on this point, stating that "[t]he commission shall conduct a public hearing on [a gaming license] application pursuant to [§] 11 1/2 of [c.] 30A." G. L. c. 23K, § 17 (c). There is no "§ 11 1/2" within G. L. c. 30A. It is possible (and we think likely) that the Legislature intended to reference G. L. c. 30A, § 11A 1/2, in which case it would have been pointing to a version of the open meeting law that was repealed by a 2009 enactment, effective in 2010 (one year prior to the passage of the act). See St. 2009, c. 28, §§ 17-18 (repealing G. L. c. 30A, §§ 11A and 11A 1/2, and adding G. L. c. 30A, §§ 18-25). On the other hand, if the Legislature intended to refer to G. L. c. 30A, § 11, then it would be referring to the section that describes adjudicatory

§ 17 (g) evinces a clear legislative intent to "expressly preclude[]" judicial review of commission licensing decisions within the meaning of G. L. c. 30A, § 14, first par.  This preclusion includes, but is not limited to, entities whose applications have been denied by the commission.

Mohegan Sun's main argument to the contrary hinges on the phrase in § 17 (g) "if denied by the commission."  According to Mohegan Sun, this phrase shows that the Legislature intended § 17 (g) to bar review of the denial of a gaming license, but not the grant of one.  This reading distorts the syntax of § 17 (g).  The language at issue provides:  "Applicants . . . shall not be entitled to any further review if denied by the commission."  G. L. c. 23K, § 17 (g).  The subject of this sentence is "applicants," which is later modified by the phrase "if denied by the commission."  Thus, the statute withholds "any further review" from <u>entities whose applications have been denied</u> by the commission.  This structure requires that a "denial" occur before the bar to review operates.  But the bar, once triggered, attaches to the failed applicant, not to the "denial" of that entity's application.

_____

proceedings.  Although the commission adverted to this problem its motion to dismiss, the parties do not discuss it in their briefs to this court.

More importantly, we consider the language of § 17 (g) to reflect a broader legislative intention to curtail judicial review, barring anyone, not just failed applicants, from obtaining review of commission licensing decisions through the ordinary channels of judicial review that the Legislature has otherwise provided, including review under G. L. c. 30A, § 14. See Olmstead v. Department of Telecomm. & Cable, 466 Mass. 582, 588 (2013) (court gives effect to statute's plain and ordinary meaning where statute's words are clear).  There was no error.

b.  Availability of certiorari review.  Given our interpretation of § 17 (g), the obvious threshold question regarding certiorari review is whether such review of a commission licensing decision may be available notwithstanding § 17 (g).  The answer to the question is yes.  Although § 17 (g) precludes ordinary modes of judicial review and thereby qualifies, for purposes of G. L. c. 30A, § 14, as a provision rendering review under that statute unavailable, it does not have the same effect with respect to certiorari review, which "is of extraordinary nature" and "is one of the ancient prerogative writs, whose history stretches far back toward the beginnings of the common law." Swan v. Justices of Superior Court, 222 Mass. 542, 544 (1916).  That history provides an independent basis for certiorari review outside the scope of § 17 (g) and G. L. c. 30A, § 14.  As the court stated in Swan,

supra, only "words unmistakable in import" will "express a legislative purpose to deprive parties . . . from the shelter of this writ," and we do not read the language of § 17 (g) as going so far. See Swan at 543-544 (statutory language, "there shall be no appeal" from decision of Superior Court judge "falls far short" of precluding certiorari review). See also Indeck v. Clients' Sec. Bd., 450 Mass. 379, 384 (2008) (certiorari review "not necessarily precluded" even where decision declared "final or unreviewable"). Our conclusion is reinforced when we consider the language of § 17 (g) against the backdrop of the Legislature's declaration that a "paramount policy objective" of the act is to "ensur[e] public confidence in the integrity of the gaming licensing process." G. L. c. 23K, § 1 (1). It would be difficult to give meaning to that declaration were we to read § 17 (g) as the commission suggests we should -- that is, as precluding even the extraordinary remedy of certiorari review. Again, there was no error.

Here, there are four issues related to certiorari review: (1) whether Mohegan Sun's complaint in intervention was timely; (2) whether the doctrine of present execution allowed the commission to bring an immediate, interlocutory appeal from the motion judge's decision that certiorari review is available to Mohegan Sun; (3) whether Mohegan Sun satisfies the necessary conditions to entitle it to certiorari review; and (4) if so,

what is the nature and scope of certiorari review of a licensing decision by the commission.

(1) Timeliness. The commission argues that Mohegan Sun's certiorari claim is jurisdictionally time barred because the complaint was not filed within the sixty-day limitations period in G. L. c. 249, § 4. Mohegan Sun responds that its motion to intervene and accompanying complaint relate back to the time of the original plaintiffs' complaint in much the same way as Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974), permits for amended complaints.

"Whether a party should be allowed to intervene is a matter that is largely left to the discretion of the judge below." Corcoran v. Wigglesworth Mach. Co., 389 Mass. 1002, 1003 (1983), citing Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974). Although a statute of limitations and its accompanying rationale of repose certainly are important factors in resolving the issue, they are not necessarily dispositive; rather, timeliness in the intervention context is a more flexible concept that also may take into account (1) the stage at which the party intervened, (2) any prejudice that arises from a delayed intervention, and (3) an applicant's particular need to intervene. See J.W. Smith & H.B. Zobel, Rules Practice, § 24.4, at 374-376 (2d ed. 2006).

Here, at the time of Mohegan Sun's motion to intervene, the original plaintiffs had just filed an assented to motion to file

their second amended complaint. Mohegan Sun's motion to intervene then was allowed without opposition from the commission. As discussed supra, the claims and allegations in the second amended complaint and the intervenor's complaint are very similar. The commission did not challenge the timeliness of the intervention, in its motion to dismiss, until several months after the intervention was allowed. Given those circumstances, the commission cannot show that it was prejudiced by Mohegan Sun's intervention. See Corcoran, 389 Mass. at 1003. See also Sargeant v. Commissioner of Pub. Welfare, 383 Mass. 808, 819 (1981).

Furthermore, we agree with the motion judge that, at least in this case, there is little functional difference between Mohegan Sun filing a complaint in intervention and Mohegan Sun being added as a new plaintiff to the original plaintiffs' second amended complaint under Mass. R. Civ. P. 15; if the latter course of action had been followed, the generous relation-back principles applicable to amendments to complaints would permit the amendment. Cf. Rafferty v. Sancta Maria Hosp., 5 Mass. App. Ct. 624, 628 (1977) ("[T]he distinction in this case between a motion to intervene and a motion to amend by adding plaintiffs is purely formal . . . . Whether we treat the new plaintiffs as parties added by an amendment which relates back to the original complaint or as interveners makes no

difference in the circumstances of this case"). Accordingly, we decline to disturb the motion judge's ruling that Mohegan Sun's certiorari claim is not barred as untimely.

(2) Doctrine of present execution. The denial of the commission's motion to dismiss Mohegan Sun's certiorari review claim is an interlocutory ruling. The doctrine of present execution provides a narrow exception to the general rule prohibiting interlocutory appeals, provided two conditions are met: (1) the matter is collateral to the merits of the controversy, and (2) the interlocutory ruling will interfere with rights in a way that cannot be remedied on appeal from the final judgment. See Marcus v. Newton, 462 Mass. 148, 151-152 (2012). Generally, orders denying motions to dismiss based on immunity from suit satisfy both criteria. Shapiro, 464 Mass. at 264-265, and cases cited.

Given these requirements, the commission's attempt to invoke the doctrine hinges on its position that § 17 (g) precludes any and all forms of judicial review of its licensing decisions, and therefore immunizes the commission from suit.

We have decided in this case that certiorari review of licensing decisions sometimes may be available. Therefore, the commission is not entirely immune from suit, and it may not invoke the doctrine of present execution to obtain review of the judge's interlocutory order. Nevertheless, we discuss the other

two issues concerning certiorari review that we have identified because they have been briefed fully by the parties, they raise significant issues of statutory interpretation concerning the commission (a relatively new and important public agency), and addressing them is in the public interest.  See Marcus, 462 Mass. at 153, and cases cited.

(3)  Prerequisites for certiorari review.  In general, a plaintiff is only entitled to certiorari review of an administrative decision if it can demonstrate the presence of three elements:  "(1) a judicial or quasi judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review."  Indeck, 450 Mass. at 385.  The commission argues that Mohegan Sun, as an applicant for a gaming license, does not have a justiciable right to vindicate through certiorari review and that, even if it does, the proceedings appealed from are not judicial or quasi judicial.  We agree with the motion judge that Mohegan Sun meets the prerequisites for certiorari review in this case.

When distinguishing a quasi judicial agency proceeding from a legislative or purely administrative one, we have looked generally to the form of the proceeding and examined the extent to which it resembles judicial action.  See Hoffer v. Board of Registration in Med., 461 Mass. 451, 457 (2012).  However, the

line beyond which an agency proceeding becomes quasi judicial is rarely a bright one. Instead, courts have looked to a number of factors in deciding the question: (1) whether the proceeding is preceded by specific charges, see School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 576 (2007); (2) whether the proceeding involves sworn testimony by witnesses subject to cross-examination, see id., or a party attesting to certain facts, see Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 727 (2016), as opposed to unsworn statements by interested persons advocating for or against a proposed new policy, see School Comm. of Hudson, 448 Mass. at 576; (3) whether the agency conducts an investigation into the veracity of attested-to facts, see Frawley, supra; (4) whether the proceeding culminates in an individualized determination of a party's entitlement to some benefit, see id., or an individualized course of discipline, see Hoffer, supra, as opposed to culminating in the adoption of a rule of general applicability, see Pronghorn, Inc. v. Licensing Bd. of Peabody, 13 Mass. App. Ct. 70, 72 (1982); and (5) whether the proceeding is followed by the adoption of formal findings of fact, see School Comm. of Hudson, supra.

Applying those factors here, we observe, on the one hand, that the licensing hearing was not preceded by specific charges, was not adversarial in the typical judicial sense, and provided no opportunity for cross-examination. See 205 Code Mass. Regs.

§ 118.07 (1)-(2) (2014).[4]  Further, it invited unsworn statements by persons advocating support or opposition to a license application.  See G. L. c. 23K, § 17 (d).

On the other hand, applicants were required to present information to the commission "truthfully, fully and under oath."  205 Code Mass. Regs. § 118.07 (2).  Applicants also were provided an opportunity to respond to the commission as part of the licensing hearing, both to correct perceived factual errors in the commission's presentations and to respond to conditions that the commission proposed to place on the granting of a license.  Further, the commission was required to conduct thorough investigations into the applicants, first into their suitability, see G. L. c. 23K, § 12, and later, for those deemed suitable, into the materials the applicants submitted as part of their applications, see G. L. c. 23K, §§ 15 (11), 17, 18.  Once those steps were completed, the commission made a highly

---

[4] The commission points out that its regulations describe the proceedings in the second phase of the licensing process as "administrative and legislative in nature, not adjudicatory." 205 Code Mass. Regs. § 118.07 (1) (2014).  However, as discussed in note 3, supra, the statutory authority for that declaration is less than clear.  More to the point, the term "adjudicatory proceeding" has a specific statutory definition, see G. L. c. 30A, § 1 (1), with specific consequences regarding, for instance, how the hearing is conducted, see G. L. c. 30A, §§ 10, 11.  As discussed in more detail in the text, the term "quasi judicial proceeding" has a substantially broader and more flexible meaning than the term "adjudicatory proceeding" as defined in G. L. c. 30A.  Consequently, our analysis is not dependent on the designation "adjudicatory proceeding."

individualized determination to issue a gaming license to Wynn and to deny the same to Mohegan Sun. This determination did not concern a new rule of general applicability, but rather conferred a particular benefit upon a particular entity and denied that benefit to another entity. The determination was accompanied by more than twenty pages of findings and evaluation analyzing the manner in which each applicant proposed to advance the statutory objectives of the act.

We conclude that, on balance, the category of quasi judicial proceedings is flexible enough to include the commission's licensing hearing at issue here. Accordingly, Mohegan Sun has satisfied the first element for certiorari review.

Mohegan Sun also satisfies the second element of certiorari review, demonstrating that it has available to it no other adequate remedy. See Indeck, 450 Mass. at 385. The commission does not contest this point. To the contrary, it argues that its licensing decisions generally are not subject to any judicial review whatsoever; it further contends that such preclusion of review is both commonplace and constitutional. However, the point at which ordinary avenues of review vanish (e.g., G. L. c. 30A, § 14) is precisely where the extraordinary remedy of certiorari may come into play. See Indeck, 450 Mass. at 384 ("certiorari review is not necessarily precluded even if

a decision is declared [by rule or statute] to be final or unreviewable"); MacKenzie v. School Comm. of Ipswich, 342 Mass. 612, 614 (1961) ("Apart from review under [G. L. c. 30A], if available, certiorari is the only way of reviewing decisions declared final by statute"); Natick v. Massachusetts Dep't of Pub. Welfare, 341 Mass. 618, 620 (1961) ("It is well established that certiorari lies notwithstanding provisions barring appeal by any party"); Swan, 222 Mass. at 544. (certiorari review available "when no other means of relief are open").  Thus, our conclusion that § 17 (g) generally precludes judicial review of commission licensing decisions under G. L. c. 30A, § 14, supports Mohegan Sun's argument that it meets the second element for certiorari review.

At oral argument, the commission pointed out other areas of the law that might allow judicial review of certain commission decisions.  For instance, it mentioned §§ 35, 36, and 45 of the act itself.  However, these provisions do not pertain to a decision by the commission regarding the issuance of a license.  Even if they did, these sections explicitly provide for an adjudicatory hearing under G. L. c. 30A.  See G. L. c. 23K, §§ 35 (g), 36 (d), 45 (e).  The act makes no such provision for gaming license applicants (like Mohegan Sun) whose applications have been denied, and indeed generally precludes such entities

from obtaining judicial review of commission licensing decisions. See G. L. c. 23K, § 17 (g).

Additionally, the commission directed us to certain Federal cases where the courts upheld a general statutory bar to judicial review of agency decisions, but left open the possibility of limited review in egregious cases.  See, e.g., United States v. Bozarov, 974 F.2d 1037, 1044-1045 (9th Cir. 1992), cert. denied, 507 U.S. 917 (1993), and cases cited (upholding general preclusion of judicial review, but noting review would remain possible for "colorable constitutional claims" and when agency head "acted in excess of his delegated authority").  One problem with this cluster of cases is that they do not specify the precise mechanism for obtaining review in the hypothetical egregious case.  More to the point, they do not stand for the proposition that certiorari is an inappropriate mechanism for seeking review when those egregious cases arise in the shadow of a general statutory bar to judicial review.  Thus, the cases do not help the commission with respect to the second element.

In these circumstances, Mohegan Sun has sufficiently demonstrated a lack of adequate alternative relief such that it satisfies the second element for certiorari review.

Finally, Mohegan Sun has satisfied the third element for certiorari review by alleging that the proceeding under review

has worked a substantial injury or injustice.  See Indeck, 450 Mass. at 385.  As the motion judge observed, the commission relies heavily on Abdow v. Attorney Gen., 468 Mass. 478 (2014), and Caesars Mass. Mgt. Co., LLC v. Crosby, 778 F.3d 327 (1st Cir. 2015), to support its position that Mohegan Sun does not have a justiciable right that was injured such that certiorari review may proceed.  The commission overstates the value of these cases to its position.  It is true that, in Abdow, supra at 495, this court said that the act "provides applicants with no enforceable legal rights and contains strong language suggesting that the Legislature intended to give them none."  Similarly, in Caesars, supra at 334, the United States Court of Appeals for the First Circuit, drawing on our opinion in Abdow, said that Massachusetts law does not recognize a gaming license application as "a source of expectable value sufficiently reliable to be protected as property."  But these remarks, in context, were supporting a narrower holding:  that license applicants do not have a constitutionally protected interest in a gaming license.  See Abdow, supra at 487, 493, 495-496; Caesars, supra at 334-335.

A constitutionally protected right and a "justiciable right" for purposes of certiorari review are two different creatures.  In most cases, the former is a subset of the latter.  For instance, in the Hoffer case, this court rejected the

plaintiff's argument that she had a constitutionally protected property interest in the reinstatement of her medical license. 461 Mass. at 455-456.  Nevertheless, "we treat[ed] the wrongful withholding of [the plaintiff's] reinstatement to her chosen profession as sufficient injury under the third prong of the Indeck test" such that certiorari review was appropriate.  See id. at 457.  See also Bielawski v. Personnel Adm'r of Div. of Personnel Admin., 422 Mass. 459, 464, 467 (1996) (rejecting constitutional claims of police officer who was not promoted, but noting "[t]he appropriate method of review . . . would have been for the plaintiff to seek relief in the nature of certiorari"); Saxon Coffee Shop, Inc. v. Boston Licensing Bd., 380 Mass. 919, 923 (1980) (permitting certiorari review where agency proceeding "resulted in injury in the form of a lost license" to operate coffee shop).

We recognize that, in the Hoffer and Saxon cases, for example, the parties sought certiorari review while attempting to restore a license that had been taken away from them, whereas here, Mohegan Sun seeks certiorari review despite not having been awarded a license in the first place and where the statute makes clear that "[a]pplicants shall have no legal right or privilege to a gaming license."  G. L. c. 23K, § 17 (g). Nonetheless, those cases show it is not necessary that Mohegan Sun assert a constitutional right in order to obtain certiorari

review. Cf. <u>Yerardi's Moody St. Restaurant & Lounge, Inc</u>. v. <u>Selectmen of Randolph</u>, 19 Mass. App. Ct. 296, 303 (1985) (<u>Yerardi's</u>) ("In this Commonwealth the right to a hearing where government exerts power upon an individual in a matter of consequence has been related, on occasion, not strictly to the constitution, but to an ethic that pervades our legal system"). Here, Mohegan Sun had a legitimate expectation, backed up by substantial investments of resources in the application process, that the commission would follow the law in awarding the license that Mohegan Sun sought. This interest, which Mohegan Sun asserts was harmed by the commission's alleged deviations from the statutory standards, satisfies the third element of certiorari review.

(4) <u>Nature and scope of certiorari review</u>. Generally, the standard of review for a certiorari action is calibrated to the nature of the action for which review is sought. See, e.g., <u>Frawley</u>, 473 Mass. at 728, and cases cited. "Ordinarily, where the action being reviewed is a decision made in an adjudicatory proceeding where evidence is presented and due process protections are afforded, a court applies the 'substantial evidence' standard." <u>Figgs</u> v. <u>Boston Hous. Auth.</u>, 469 Mass. 354, 361-362 (2014). On the other hand, "where the decision under review was <u>not</u> made in an adjudicatory proceeding," but rather "entails matters committed to or implicating a board's

exercise of administrative discretion, the court applies the 'arbitrary or capricious' standard" (citation omitted). Id. at 362 n.14. Further, in order to best tailor the scope of review to the nature of the administrative decision at issue, it is sometimes necessary to analyze separately the component parts of the underlying decision. See Yerardi's, 19 Mass. App. Ct. at 300. In other words, some components of an administrative decision may be unreviewably discretionary, while others will be "submissible to the test of elementary justice that is invoked by the words 'arbitrary or capricious.'" Id. at 301.

The Legislature intended § 17 (g) to sharply curtail the availability of judicial review of commission licensing decisions, and thereby avoid protracted legal battles over every commission licensing decision. Such litigation would result in lost tax revenue and might make gaming companies more reluctant to apply for a license because of the risk of burdensome litigation. Section 17 (g) embodies a directive to avoid, to the extent possible, those costs.

Accordingly, the standard of review for a certiorari action should be extremely deferential to the commission. In essence, the act places a number of "unreviewable policy considerations," Casa Loma, Inc. v. Alcoholic Beverages Control Comm'n, 377 Mass. 231, 234 (1979), squarely in the hands of the commission. See, e.g., G. L. c. 23K, § 18 (2) ("promoting local businesses in

host and surrounding communities); § 18 (5) ("building a gaming establishment of high caliber with a variety of quality amenities . . . so that patrons experience the diversified regional tourism industry"); § 18 (13) ("offering the highest and best value to create a secure and robust gaming market in the region and the commonwealth"). To review the commission's decisions regarding these types of highly discretionary determinations -- exercises of the commission's "professional expertise and judgment in weighing and balancing a wide range of considerations peculiar to the petitioner in light of the public interest" (quotation and citation omitted), Hoffer, 461 Mass. at 455 -- would be inappropriate.

On the other hand, Mohegan Sun alleges, for example, that the commission, in awarding the license to Wynn, violated certain requirements of the act, ignored specific statutory criteria, and gave favorable treatment to Wynn in contravention of the act. Such allegations are amenable to arbitrary and capricious review, where courts ask whether an agency's discretionary decision was "legally erroneous or so devoid of factual support as to be arbitrary and capricious." MacLaurin v. Holyoke, 475 Mass. 231, 238 (2016). These components of the commission's decision can be disturbed only if they were based on a "legally untenable ground" or if "unreasonable, whimsical, capricious, or arbitrary" in nature (citation omitted). See

Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 218 (1989).  Such a carefully circumscribed mode of analysis accords with the animating principle behind certiorari review -- that it is "a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi[]judicial tribunal."  School Comm. of Hudson, 448 Mass. at 575-576.  It also accords with our understanding that the Legislature, through § 17 (g), sharply curtailed the availability of judicial review of commission licensing decisions, and thereby vested a tremendous amount of discretion in the commission.

c.  Declaratory judgment.  Mohegan Sun also seeks a declaratory judgment regarding the constitutionality of the act and the commission's regulations.  However, it concedes that the motion judge properly ruled that because it has met the prerequisites to obtain certiorari review, its constitutional claims, which are premised on the absence of any available avenue of judicial review, are moot.  Therefore, these claims were properly dismissed.

2.  Claims of the city and the union.  The city and the union assert substantially the same claims against the commission as does Mohegan Sun, seeking review under both G. L. c. 30A and the certiorari statute, and seeking declaratory

judgment. The motion judge ruled that the city and the union both lacked standing to bring those claims because, unlike Mohegan Sun, their injuries did not fall within the "zone of interests" protected by the act.

At the outset, we note that the city and the union cannot be within the "zone of interests" protected by the act for purposes of review under G. L. c. 30A, § 14, because, as previously discussed, § 17 (g) of the act expressly precludes such review. If disappointed license applicants cannot obtain judicial review under G. L. c. 30A, § 14, it would be absurd to construe the statute as allowing such review to parties, like the city and the union, who suffer a less direct injury from the licensing process. See Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375-376 (2000) (declining to construe statute in way that "produce[s] absurd results"). Because G. L. c. 30A, § 14, is an inappropriate vehicle for either the city or the union to challenge commission licensing decisions, their standing to bring such a claim is immaterial. See Frawley, 473 Mass. at 724-725 & n.6.

With respect to the certiorari and declaratory judgment claims of the city and the union, "[w]e treat standing as an issue of subject matter jurisdiction." Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). "A party has standing when it can allege an injury within the area of concern of the

statute or regulatory scheme under which the injurious action has occurred." School Comm. of Hudson, 448 Mass. at 579, quoting Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293 (1977). Whether a plaintiff's injury falls within the so-called "zone of interests" of a statute or regulatory scheme depends upon a number of factors, including "[1] the language of the statute in issue; [2] the Legislature's intent and purpose in enacting the statute; [3] the nature of the administrative scheme; [4] decisions on standing; [5] any adverse effects that might occur, if standing is recognized; and [6] the availability of other, more definite, remedies to the plaintiffs." Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135-136 (2000).[5] In weighing these factors, "we pay special attention to the requirement that

---

[5] The union (and, to a lesser extent, the city) argues that the "zone of interests" test and the accompanying factors enunciated in Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135-136 (2000), apply only where the relevant statute provides no independent basis for standing, and thus would govern for its declaratory judgment claim, but not for its certiorari claim. We disagree. The union cites no authority, and we have located none, to support such a distinction. Moreover, the argument is at odds with the logic of Enos itself, which seems to suggest its factors may apply regardless of whether a statute provides an independent basis for standing. Even if we agreed that the union and the city have standing, those claims would fail because, for the same reasons stated in the text, neither has suffered the requisite "substantial injury or injustice" to satisfy the third element for certiorari review. See Indeck v. Clients' Sec. Bd., 450 Mass. 379, 385 (2008).

standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs." Id. at 136.

We now apply these factors to the city and the union.

a. The city's standing for certiorari and declaratory judgment claims. The city argues that the act ensures that the licensing process takes into account the interests of municipalities, especially "host communities." See G. L. c. 23K, §§ 2, 15 (8), (13), (14). Because the city was a host community to Mohegan Sun, with a statutorily mandated host community agreement in place, the city argues it should have standing to challenge the ultimate decision of the commission in awarding the license to Wynn and denying the license to Mohegan Sun.

Although § 17 (g) reveals a clear legislative intent to sharply curtail judicial review of commission licensing decisions, and thereby avoid the costs and delays of protracted litigation, an important purpose is served by keeping open at least some limited avenue for judicial review in order to prevent wholesale violations of the act and to ensure public confidence in the licensing process. Against that backdrop, we conclude that granting standing for a certiorari action only to the disappointed applicant, and not to its host community, strikes the appropriate balance. At the end of the day, the

potential benefits affiliated with the award of a gaming license accrue first to the applicant, and only secondarily to the host community.[6]  If the Legislature intended for host communities to have standing to challenge a commission licensing decision, it would have done so far more clearly than in anything we can find in the act and its associated regulations.

With respect to the fourth Enos factor, we are aware of no other decisions concerning standing that are particularly instructive here.  Regarding the fifth and sixth factors, we acknowledge that our opinion today effectively leaves the city with no avenue to challenge the commission's licensing decision.  On the other hand, the city understates the adverse effect of protracted litigation that would result if the statute conferred standing on municipalities to challenge the grant of a gaming license.  This factor deserves particular weight given our understanding that the Legislature intended § 17 (g) to restrict judicial review of commission licensing decisions.

---

[6] By no means does this belittle the loss that the city suffered when the commission ultimately awarded the region A license to Wynn and not Mohegan Sun.  The potential economic benefits to the city, discussed at length in its brief, were substantial.  But the city loses sight of the fact that these benefits were never more than potential, and always were contingent upon Mohegan Sun's receipt of a license that the commission had "full discretion" not to award.  See G. L. c. 23K, § 17 (g).

In light of all of these factors, we concur with the motion judge that the city does not have standing to pursue its certiorari and declaratory judgment claims.

b. The union's standing for certiorari and declaratory judgment claims. Essentially, the union argues that its members had an expectation of significant employment opportunities should the commission have awarded the region A license to Mohegan Sun. Further, it argues that the act expressly included employment opportunities and the support of organized labor as considerations in the licensing process. See G. L. c. 23K, §§ 1 (5), 18 (18).

The reasons discussed with respect to the city apply with equal, if not greater, force to defeat the union's argument, where the harm it claims to have suffered is even more remote than that claimed by the city. In essence, the potential benefits that the union claims to have lost do not suffice to confer standing in the face of forceful statutory language limiting judicial review of commission licensing decisions. We do not read the act to bestow any right or interest upon the union, nor to create any duty between the commission and it. We agree with the motion judge that, if the act did either of those things in a way that was sufficient to confer standing, virtually any resident who could have been employed by Mohegan Sun would also have standing to challenge the commission's award

of the license to Wynn. Thus, in addition to the delay discussed in connection with the city, conferring standing upon the union could have the drawback of exposing the commission to a flood of lawsuits, all despite the language in § 17 (g) aimed at curtailing exactly such litigation. That harm would inure not only to the commission, but to successful applicants and their host communities as well. Accordingly, we conclude that the union lacks standing to assert its certiorari and declaratory judgment claims.

3. The individual plaintiffs' open meeting law claim. The individual plaintiffs allege the commission violated the open meeting law, G. L. c. 30A, §§ 18-35, based on three bundles of allegations: (1) the facts and circumstances surrounding the recess of an otherwise public September, 2014, hearing; (2) the inferences of nonpublic deliberations to be drawn from the public statements of two commissioners; and (3) calendar entries suggesting a quorum of the commission engaged in nonpublic deliberations. The commission argues, in line with the motion judge, that none of the individual plaintiffs' allegations raise their claim for relief above a speculative level.

A complaint only survives a motion to dismiss if it includes enough factual heft "to raise a right to relief above the speculative level." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007).  The open meeting law provides a framework under which "all meetings of a public body shall be open to the public" unless a statutory exception applies.  G. L. c. 30A, § 20 (a).  A "meeting" under the statute consists of "a deliberation by a public body with respect to any matter within the body's jurisdiction."  G. L. c. 30A, § 18.  There are several statutory exceptions from this broad definition of "meeting" -- for example, "attendance by a quorum of a public body at a public or private gathering, including a conference or training program or a media, social or other event, so long as the members do not deliberate" (emphasis added).  G. L. c. 30A, § 18 (b).  A "deliberation," in turn, includes "an oral or written communication through any medium, including electronic mail, between or among a quorum of a public body on any public business within its jurisdiction."  G. L. c. 30A, § 18.  It does not include "the distribution of a meeting agenda, scheduling information or distribution of other procedural meeting [sic] or the distribution of reports or documents that may be discussed at a meeting, provided that no opinion of a member is expressed" (emphasis added).  G. L. c. 30A, § 18.  The statute also permits a public body to deliberate on certain matters in executive session, closed to the public.  G. L. c. 30A, §§ 18, 21.  Finally, the open meeting law permits an array of remedies for a violation, ranging from nullifying the action taken at a meeting

to imposing a civil penalty or compelling compliance with the law.  G. L. c. 30A, § 23 (c).

Although the statute was substantially revised and reorganized in 2009, see St. 2009, c. 28, §§ 17, 18, we conclude that the new statutory language and structure does not require us to abandon wholesale our existing open meeting law jurisprudence.  In particular, we interpret the open meeting law as continuing to be a statute "designed to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based."  Ghiglione v. School Comm. of Southbridge, 376 Mass. 70, 72 (1978).  And the new version of the statute does not alter our belief that "[i]t is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached."  Foudy v. Amherst-Pelham Regional Sch. Comm., 402 Mass. 179, 184 (1988).

With this framework in mind, we agree with the motion judge's decision except insofar as she dismissed the plaintiffs' claim based on the commissioners' calendar entries.  As the foundation for that theory, the plaintiffs submitted a compact disc of the commissioners' calendar entries from 2012 to 2015, along with a summary table, alleging numerous violations of the

open meeting law.  Although the full disc is not now before us,[7] the record does include two examples that appear to "plausibly allege" violations of the law.  One set of entries shows four commissioners[8] were scheduled to attend a three-hour "applicants discussion" on July 31, 2013.  Another shows three commissioners were scheduled to attend a one-hour "advisory groups brainstorming" session on April 8, 2014.[9]  Indulging all

---

[7] The precise status of this disc is somewhat unclear.  According to the parties' briefs, the disc was not attached to the second amended complaint.  However, it was submitted to the court and the parties after the commission's motion to dismiss had been filed, and was before the motion judge prior to the motion to dismiss being argued and decided.  It further appears that the judge took judicial notice of these documents, and her decision indicates she took them into account in her ruling on the motion to dismiss.

[8] Typically, for a five-member body, a quorum consists of three members.  See G. L. c. 30A, § 18 ("quorum" consists of "a simple majority of the members of the public body, unless otherwise provided"); G. L. c. 23K, § 3 (d) (quorum of commission consists of three commissioners).

[9] A third set of entries depicts what the plaintiffs allege constitutes a so-called "rotating quorum" violation of the open meeting law, in which one commissioner, followed in close sequence by two other commissioners, received a traffic briefing.  See McCrea v. Flaherty, 71 Mass. App. Ct. 637, 648-649 (2008) (describing "rotating quorum" open meeting law violation).  It is not clear from the calendar entries alone whether these meetings consisted of the mere distribution of information to be discussed at a meeting, see G. L. c. 30A, § 18, or whether, as the plaintiffs suggest, they constituted three commissioners engaging in serial deliberation.  Nevertheless, this court has held that even the information-gathering activity of a public body may constitute a "verbal exchange" such that the body has deliberated within the meaning

reasonable inferences in the plaintiffs' favor, it appears plausible that an "applicants discussion" or "advisory groups brainstorming" session, attended by a quorum of the commission, would include at least some discussion that qualifies as a "deliberation" of a matter within the commission's jurisdiction, such that the meeting should have been open to the public under the statute.  Accordingly, we conclude that these calendar entries raise the plaintiffs' claim for relief above a speculative level.  Moreover, we must accept as true the allegations in the plaintiffs' summary chart, of which the above are merely two examples.  This chart depicts, albeit with somewhat less precision and detail than the full calendar entries, numerous additional potential violations of the open meeting law.[10]

Contrary to the commission's argument on appeal, a letter to the commission from the Attorney General, dated December 23, 2015, entitled "Open Meeting Law Review," demonstrates why

---

of the statute.  See Gerstein v. Superintendent Search Screening Comm., 405 Mass. 465, 470 (1989).

[10]  We take no position about whether the plaintiffs will ultimately succeed in proving this claim.  In particular, we note that the commission, in its motion papers and appellate briefs, did not specifically address the two sets of calendar entries that we mention in the text.

dismissal was inappropriate at this stage in the litigation.[11] The letter describes the Attorney General's investigation into the commission's meeting practices and concludes that, despite "broad compliance" with the open meeting law, the commission did violate the law on some occasions. At least some of the commissioners' meetings determined by the Attorney General to have violated the law appear to be reflected in the plaintiffs' summary chart. Thus, the letter illustrates that sorting out which of the plaintiffs' allegations can be substantiated and which cannot requires some degree of investigation, and therefore is a task for the discovery process.

Finally, the individual plaintiffs argue that the motion judge effectively carved out a new exception to the open meeting law for public bodies, like the commission, whose members are also full-time employees of the agency. We need not decide whether the motion judge indeed did carve out such an exception by her ruling. In any event, no such exception exists. The fact that the commissioners are full-time employees of the commission, see G. L. c. 23K, § 3 (e), does not change the statutory definition of "deliberation" for purposes of the open meeting law, nor does it change the conditions under which a

---

[11] We acknowledge that the motion judge did not have this letter before her, as it postdates her ruling, and we do not consider it as to the merits of the plaintiffs' claims. Rather, we use it simply to illustrate why dismissal was inappropriate.

"meeting" of a public body must be open to public.  In other words, the fact that the commission's structure may make it difficult to comply with the law does not alter the requirement of compliance.

In sum, we conclude that the individual plaintiffs have plausibly stated a claim for relief under the open meeting law. Accordingly, we reverse that portion of the judge's decision.

Conclusion.  For the foregoing reasons, we affirm in part, reverse in part, the judge's allowance of the defendant's motion to dismiss, and remand the case for further proceedings consistent with this opinion.

So ordered.