FORE RIVER RESIDENTS AGAINST COMPRESSOR STATION vs. OFFICE OF COASTAL ZONE MANAGEMENT, 100 Mass. App. Ct. 556

 
 FORE RIVER RESIDENTS AGAINST COMPRESSOR STATION [Note 1] vs. OFFICE OF COASTAL ZONE MANAGEMENT & others. [Note 2]

100 Mass. App. Ct. 556
 October 15, 2021 - December 16, 2021

Court Below: Superior Court, Norfolk County
Present: Green, C.J., Singh, & Grant, JJ.

 

Gas Company. Office of Coastal Zone Management. Administrative Law, Adjudicatory proceeding, Proceedings before agency, Judicial review. Practice, Civil, Action in nature of certiorari, Declaratory proceeding, Standing, Dismissal. Declaratory Relief.

In a civil action seeking judicial review of a determination by the Massachusetts Office of Coastal Zone Management (office) that construction of a natural gas compressor station would be consistent with the enforceable policies of the Massachusetts coastal zone management program, the Superior Court judge properly granted motions to dismiss, where judicial review was not available under G. L. c. 30A, § 14, given that there was no right to an agency hearing [559-561]; where judicial review was not available by way of an action in the nature of certiorari pursuant to G. L. c. 249, § 4, given that the proceeding was not judicial or quasi judicial [561-562]; and where judicial review was not available by way of declaratory judgment, given that the intervener lacked standing to assert such a claim, in that nothing in the statutory language, legislative intent, or regulatory scheme indicated that the public could seek judicial review of such a determination, in that recognition of standing in the circumstances would have resulted in an adverse effect in the form of unnecessary delays due to lawsuits brought by landowners near the project seeking redress for injuries not within the ambit of the alleged duty owed to them by the public official or agency charged with administration of the statute, and in that there were other remedies available and availed [562-564].

CIVIL ACTION commenced in the Superior Court Department on November 22, 2019. 

 Motions to dismiss were heard by Rosemary Connolly, J.

 Michael H. Hayden for the intervener.

 Julie E. Green, Assistant Attorney General, for Office of Coastal Zone Management.

 Page 557 

 Nicholas C. Cramb for Algonquin Gas Transmission, LLC, & another.

 SINGH, J. Algonquin Gas Transmission, LLC, and Maritimes & Northeast Pipeline, LLC (collectively, natural gas companies), seek to construct a compressor station in Weymouth as part of a project -- known as the Atlantic Bridge Project -- to expand their natural gas pipeline network. Following a determination by the Massachusetts Office of Coastal Zone Management (CZM) that construction of the compressor station would be consistent with the enforceable policies of Massachusetts's coastal zone management program, the mayor of Weymouth brought this action for judicial review in the Superior Court; Fore River Residents Against Compressor Station (FRRACS) intervened on the plaintiff's side. On motions to dismiss, a Superior Court judge concluded that CZM's determination was not reviewable under G. L. c. 30A, § 14, by an action in the nature of certiorari, or by a claim for declaratory judgment. Judgment entered in the defendants' favor, and FRRACS appeals. We affirm.

 Background. This case concerns two Federal statutes, the Natural Gas Act (NGA), 15 U.S.C. §§ 717 et seq., and the Coastal Zone Management Act (CZMA), 16 U.S.C. §§ 1451 et seq. The NGA governs "the transportation of natural gas in interstate commerce," 15 U.S.C. § 717(b), but also provides that nothing therein "affects the rights of States under . . . the [CZMA]," 15 U.S.C. § 717b(d). Separately, the CZMA recognizes that "[t]here is a national interest in the effective management, beneficial use, protection, and development of the coastal zone," 16 U.S.C. § 1451(a), and establishes a process by which States may perform consistency reviews of certain proposed activities affecting the coastal zone. See 16 U.S.C. § 1456(c)(3)(A).

 Construction of the proposed compressor station was subject to a Federal permitting process under the NGA, see 15 U.S.C. § 717f(c)(1)(A), with input provided by Massachusetts in the form of a consistency review under the CZMA, see 16 U.S.C. § 1456(c)(3)(A). Throughout the lengthy Federal permitting process and Massachusetts's consistency review, opponents of the compressor station brought multiple legal challenges to various decisions of State and Federal agencies. We briefly discuss the Federal permitting process before turning to the subject of this appeal, Massachusetts's consistency review under the CZMA.

 1. Natural Gas Act. The NGA prohibits natural gas companies from constructing or extending any facilities for the transportation

 Page 558 

 or sale of natural gas without first obtaining a certificate of public convenience and necessity (CPCN) from the Federal Energy Regulatory Commission (FERC). See 15 U.S.C. § 717f(c)(1)(A). Pursuant to the NGA, the natural gas companies applied to FERC for a CPCN in October 2015. On January 25, 2017, FERC issued the CPCN, conditioned on Massachusetts's consistency review under the CZMA. Opponents of the project brought a legal action challenging the issuance of the CPCN, but FERC's decision was affirmed in Weymouth vs. Federal Energy Regulatory Comm'n, U.S. Ct. App., No. 17-1135 (D.C. Cir. Dec. 27, 2018).

 2. Coastal Zone Management Act. Separately, the CZMA encourages "states to exercise effectively their responsibilities in the coastal zone through the development and implementation of management programs." 16 U.S.C. § 1452(2). To that end, the CZMA authorizes States to create management programs -- subject to approval by the Federal Secretary of Commerce -- that "set[] forth objectives, policies, and standards to guide public and private uses of lands and waters in the coastal zone." 16 U.S.C. § 1453(12). See 16 U.S.C. §§ 1454, 1455(d).

 Once a State has an approved coastal zone management program, the CZMA allows the State to perform consistency reviews of certain proposed activities affecting the coastal zone. See 16 U.S.C. § 1456(c)(3)(A). In particular, 

"any applicant for a required Federal license or permit to conduct an activity, in or outside of the coastal zone, affecting any land or water use or natural resource of the coastal zone of that state shall provide . . . a certification that the proposed activity complies with the enforceable policies of the state's approved program and that such activity will be conducted in a manner consistent with the program. At the same time, the applicant shall furnish to the state or its designated agency a copy of the certification, with all necessary information and data. Each coastal state shall establish procedures for public notice in the case of all such certifications and, to the extent it deems appropriate, procedures for public hearings in connection therewith."

Id. The CZMA further provides that the license or permit shall not be granted "until the state or its designated agency has concurred with the applicant's certification . . . unless the Secretary [of Commerce], on his own initiative or upon appeal by the

 Page 559 

 applicant, finds . . . that the activity is consistent with the objectives of this chapter or is otherwise necessary in the interest of national security." [Note 3] Id.

 Pursuant to G. L. c. 21A, § 4A, CZM was established to administer Massachusetts's approved coastal zone management program. The enforceable policies of that program are based on existing State statutes, regulations, and other legal authorities listed in the Massachusetts Office of Coastal Zone Management Policy Guide, https://www.mass.gov/files/documents/2016/08/qc/czm-policy-guide-october2011.pdf [https://perma.cc/3Q72-9HTG]. As relevant here, the statutes include the Wetlands Protection Act, G. L. c. 131, § 40, and the Waterways Act, G. L. c. 91, and an applicant's failure to obtain a permit required under either statute may serve as a basis for CZM to determine that the applicant's proposed activity would be inconsistent with the enforceable policies of Massachusetts's coastal zone management program. See 301 Code Mass. Regs. § 20.04(2)(d) (2013).

 Pursuant to the CZMA, the natural gas companies applied to CZM for a consistency review in October 2015, at the same time that they applied to FERC for a CPCN. Thereafter, the natural gas companies agreed to toll CZM's deadline for issuing a consistency determination while the natural gas companies sought to obtain an order of conditions under the Wetlands Protection Act and a c. 91 waterways license. On November 12, 2019, after the required order of conditions and waterways license were obtained, [Note 4] CZM issued its determination that construction of the compressor station would be consistent with the enforceable policies of Massachusetts's coastal zone management program. 

 Discussion. 1. General Laws c. 30A, § 14. FRRACS seeks judicial review of CZM's consistency determination under G. L. c. 30A, § 14. The motion judge concluded that judicial review was not available under § 14 because FRRACS did not have the right to an agency hearing. On appeal, FRRACS concedes that it did not have the right to an agency hearing and instead argues that judicial review is available under § 14 because CZM had the 

 Page 560 

opportunity, in its discretion, to hold a hearing. [Note 5] FRRACS's argument is unavailing; judicial review is not available under § 14 unless there is a right to an agency hearing.

 General Laws c. 30A, § 14, provides that judicial review is available to any person "aggrieved by a final decision of any agency in an adjudicatory proceeding." "'Adjudicatory proceeding' means a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." G. L. c. 30A, § 1. As our case law has long interpreted these provisions, judicial review is not available under § 14 unless there is "a right to an agency hearing." Springfield Hotel Ass'n v. Alcoholic Beverages Control Comm'n, 338 Mass. 699, 702 (1959). See Hoffer v. Board of Registration in Med., 461 Mass. 451, 454-456 (2012) (plaintiff could not rely on § 14 where no statute or constitutional right required board to hold hearing); School Comm. of Hatfield v. Board of Educ., 372 Mass. 513, 514-516 (1977) (same). [Note 6]

 We are unpersuaded by FRRACS's argument to the contrary, which is based on the phrase "after opportunity for an agency hearing" in the statutory definition of "adjudicatory proceeding." G. L. c. 30A, § 1. Seizing on the word "opportunity," FRRACS argues that an adjudicatory proceeding is one in which an agency has the opportunity, in its discretion under its enabling statute, to hold a hearing. This argument reads the phrase "after opportunity for an agency hearing" out of context in contravention of established rules of statutory construction. See Bolster v. Commissioner of Corps. & Taxation, 319 Mass. 81, 84-85 (1946) ("None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision"). In context, an adjudicatory proceeding

 Page 561 

 is one in which someone's rights "are required . . . to be determined after opportunity for an agency hearing." G. L. c. 30A, § 1. If someone's rights are required to be determined after opportunity for an agency hearing, the agency has no discretion whether to hold a hearing; it must do so. Therefore, and as established by our case law, an adjudicatory proceeding is one in which someone has the right to an agency hearing. See Springfield Hotel Ass'n, 338 Mass. at 702. [Note 7]

 2. Civil action in the nature of certiorari. Alternatively, FRRACS seeks judicial review by an action in the nature of certiorari, pursuant to G. L. c. 249, § 4. To obtain such judicial review, FRRACS had to "sufficiently allege '(1) a judicial or quasi judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review." Hoffer, 461 Mass. at 456, quoting Indeck v. Clients' Sec. Bd., 450 Mass. 379, 385 (2008). We agree with the motion judge that FRRACS's allegations do not satisfy this standard and that, accordingly, judicial review is not available by an action in the nature of certiorari.

 As to whether a proceeding is judicial or quasi judicial, we consider the nature of the proceeding and the extent to which it resembles judicial action. See New Bedford Educators Ass'n v. Chairman of the Mass. Bd. of Elementary & Secondary Educ., 92 Mass. App. Ct. 99, 113 (2017). Several factors guide our consideration:

"(1) whether the proceeding is preceded by specific charges; (2) whether the proceeding involves sworn testimony by witnesses subject to cross-examination, or a party attesting to certain facts, as opposed to unsworn statements by interested persons advocating for or against a proposed new policy; (3) whether the agency conducts an investigation into the veracity of attested-to facts; (4) whether the proceeding culminates in an individualized determination of a party's entitlement to some benefit, or an individualized course of discipline, as opposed to culminating in the adoption of a rule of general applicability; and (5) whether the proceeding is followed by the adoption of formal findings of fact."

 Page 562 

Id., quoting Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 600-601 (2017).

 In this case, the above factors weigh against a conclusion that the proceeding before CZM was judicial or quasi judicial. In particular, we note that the regulatory scheme required CZM to provide an opportunity for public participation only through public notice and comment. See 301 Code Mass. Regs. § 20.04(2)(a) (2013). The proceeding was not preceded by specific charges, and CZM was not required to hold a hearing, let alone hear sworn testimony. See id. Moreover, while CZM received information to review and provided input in the form of a consistency determination, it is the Federal government that decides whether the natural gas companies may construct the compressor station. See 301 Code Mass. Regs. § 20.04(2)(c), (d) (2013). See also 16 U.S.C. § 1456(c)(3)(A). Lastly, CZM's consistency determination did not contain formal findings of fact. Therefore, the proceeding was not judicial or quasi judicial, and judicial review is not available by an action in the nature of certiorari.

 We are also unpersuaded by FRRACS's argument that there is no other reasonably adequate remedy, that there would be a substantial injury or injustice arising from the proceeding under review, and that, accordingly, there is an equitable need for judicial review. In particular, FRRACS argues that absent judicial review, there are no checks and balances to ensure that CZM carried out its statutory purpose. This argument overlooks the fact that the State permits underlying CZM's consistency determination have been the subject of legal challenges. See note 4, supra. [Note 8]

 3. Claim for declaratory judgment. Lastly, FRRACS seeks judicial review by a claim for declaratory judgment. We again agree with the motion judge; FRRACS lacks standing to assert

 Page 563 

 such a claim. [Note 9]

 A party has standing to seek declaratory relief "when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred" (citation omitted). Revere, 476 Mass. at 607. Whether an injury falls within this "so-called 'zone of interests' of a statute or regulatory scheme depends upon a number of factors." Id. Those factors include the following: "the language of the statute in issue; the Legislature's intent and purpose in enacting the statute; the nature of the administrative scheme; decisions on standing; any adverse effects that might occur, if standing is recognized; and the availability of other, more definite, remedies to the plaintiffs." Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135-136 (2000). "In making our inquiry, we pay special attention to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs." Id. at 136. See Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 106 (1991). 

 Here, as noted by the motion judge, nothing in the statutory language, legislative intent, or regulatory scheme indicates that the public may seek judicial review of a CZM consistency determination. Indeed, while an applicant has the right to appeal to the Federal Secretary of Commerce from a determination that a project would be inconsistent with the enforceable policies of a State's coastal zone management program, see 16 U.S.C. § 1456(c)(3)(A), no similar right is given to the public under the CZMA or G. L. c. 21A, § 4A. If the Legislature intended for the public to have standing to challenge a CZM consistency determination, "it would have done so far more clearly than in anything we can find in [G. L. c. 21A, § 4A,] and its associated regulations." Revere, 476 Mass. at 608. And, while FRRACS argues that it has standing because of its environmental concerns, see note 8, supra, decisions on standing addressing a different statute and regulatory scheme have noted that "sound environmental policy does not necessarily require the availability of judicial review." Cummings

 Page 564 

 v. Secretary of Envtl. Affairs, 402 Mass. 611, 617 (1988). Accord Enos, 432 Mass. at 138-139.

 The two remaining factors -- adverse effects if standing is recognized and the availability of other remedies -- also weigh in favor of a determination of no standing. First, if standing were to be recognized, there would be an adverse effect in the form of "unnecessar[y] delay[s] [because of] lawsuits brought by landowners near the project seeking redress for injuries not within the ambit of the alleged duty owed to them by the public official or agency charged with administration of the statute." Enos, 432 Mass. at 141-142. Second, as already discussed, there were other remedies available and availed. Based on our analysis of the pertinent factors, we conclude that FRRACS did not have standing to assert a claim for declaratory judgment.

 Conclusion. For the foregoing reasons, we affirm the judgment of the Superior Court.

 So ordered.

FOOTNOTES
[Note 1] Intervener. The original plaintiff, the mayor of Weymouth, did not appeal from the judgment. 

[Note 2] Algonquin Gas Transmission, LLC; and Maritimes & Northeast Pipeline, LLC. 

[Note 3] If the State or its designated agency fails to concur or object within six months after receipt of its copy of the applicant's certification, "concurrence is conclusively presumed." 16 U.S.C. § 1456(c)(3)(A). 

[Note 4] Opponents of the project again brought legal actions challenging the issuance of the order of conditions and waterways license. Although some of the actions remain pending, those that were resolved all favored the project going forward. 

[Note 5] "CZM, at its discretion, may hold a public hearing." 301 Code Mass. Regs. § 20.04(2)(a) (2013). Here, CZM did not hold a public hearing prior to issuing its determination. 

[Note 6] FRRACS's reliance on General Chem. Corp. v. Department of Envtl. Quality Eng'g, 19 Mass. App. Ct. 287 (1985), is inapposite. In that case, judicial review was available under § 14 where there was a constitutional right to an agency hearing. See id. at 293. FRRACS's reliance on out-of-State cases, which address statutes that are different from our own, is also unavailing. 

[Note 7] FRRACS also argues that there is an equitable need for judicial review under § 14. This argument fails given the plain language of the statute. Nonetheless, we address the equitable need for judicial review in the context of discussing whether judicial review is available by writ of certiorari. 

[Note 8] FRRACS also argues that so-called "environmental justice populations," i.e., certain minority and low-income populations, will be negatively affected by the compressor station and that judicial review is necessary to ensure that CZM complied with Massachusetts's environmental justice policy, https://www.mass.gov/doc/environmental-justice-policy6242021-update/download [https://perma.cc/4LA5-68CA]. The version of Massachusetts's environmental justice policy on which FRRACS relies, however, contains the explicit disclaimer that the policy "shall not be construed to create any right to judicial review involving the compliance or noncompliance of [the Executive Office of Energy and Environmental Affairs], its agencies, its officers, or any other person with this [p]olicy." 

[Note 9] We do not address whether this means that FRRACS also lacks standing to seek judicial review under G. L. c. 30A, § 14, or by writ of certiorari. See, e.g., School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-584 (2007) (addressing whether plaintiffs had standing to seek judicial review by claim for declaratory judgment but not addressing whether plaintiffs had standing to seek judicial review under § 14 or by action in nature of certiorari). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.