## GLOBE NEWSPAPER COMPANY *VS.* COMMISSIONER OF EDUCATION.

Suffolk. January 7, 2003. - April 4, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Public Records. School and School Committee,* Testing. *Moot Question. Statute,* Construction.

In an action by a newspaper seeking a preliminary injunction requiring the Department of Education (department) to release certain preliminary testing data relating to the performance of schools and school districts, summary judgment was properly granted to the department, where the department's release of the data seven days after having received a public records request from the newspaper pursuant to G. L. c. 66, § 10, while the department took steps to correct potential errors in its compilation of the data, was presumptively reasonable and where, although the presumption could have been overcome by the newspaper's demonstrating a compelling need for earlier disclosure, the newspaper did not meet that burden in this case. [127-133]

CIVIL ACTION commenced in the Superior Court Department on November 14, 2000.

The case was heard by *Ralph D. Gants,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark W. Batten* for the plaintiff.

*Jane L. Willoughby,* Assistant Attorney General, for the defendant.

CORDY, J. In this case we must decide whether the Department of Education (department) complied with the public records law, G. L. c. 66, § 10, when it did not release certain preliminary testing data, relating to the performance of schools and school districts, for seven days after receiving a public records request from a newspaper, while it took steps to correct potential errors in the data's compilation. To do so, we must

interpret the disclosure provisions of G. L. c. 66, § 10, and reconcile the apparent internal tension between two of its paragraphs: one of which proclaims that the custodian of public records shall permit public records to be inspected and copied "without unreasonable delay" (§ 10 [*a*]); and the other which requires that such custodian comply with a request to inspect and copy public records "within ten days" of its receipt (§ 10 [*b*]).[1] We conclude, as did the motion judge, that the release of public records within ten days of the receipt of a request to inspect or copy them is presumptively reasonable, and that although this presumption may be overcome by a requestor who can demonstrate a compelling need for earlier disclosure, the requestor, Globe Newspaper Company (Globe), did not meet that burden here. Consequently, summary judgment was properly granted to the department.

1. *Background.* The department administers an educational assessment test annually to nearly every student in Massachusetts in the fourth, eighth, and tenth grades. The test is called the Massachusetts Comprehensive Assessment System (MCAS) test, and it has been controversial (and newsworthy) since its inception. The release of the MCAS results is an annual source of anxiety not only for the students who take the test, but also for the department, district superintendents, school principals, teachers, school districts, and the communities they serve. In the spring of 2000, over 220,000 students from approximately 1,800 schools in 350 districts took the MCAS test. The department's MCAS contractor, Harcourt Educational Measurement, Inc. (Harcourt), was responsible for scoring all the tests and providing the department and school district superintendents with the results.[2]

On November 8, 2000, a reporter for the Globe submitted a

[1]The apparent tension between these two statutory provisions is also reflected in the language of the regulations promulgated under the public records law, which require both that governmental agencies allow access to public records "without unreasonable delay," and that "[e]ach custodian shall comply with a request as soon as practicable and within ten days." 950 Code Mass. Regs. § 32.05(2) (1993).

[2]The 2000 Massachusetts Comprehensive Assessment System (MCAS) test was the first for which Harcourt Educational Measurement, Inc. (Harcourt), was responsible. Previously, the department had contracted with Advanced Systems in Measurement & Evaluation, Inc. (Advanced Systems), to score the

written request for public records to the commissioner of the department. The request sought the release of "all of the 2000 MCAS scores, including school, district, and statewide results, as soon as the department has received them." The Statewide test results were released to the public, including the Globe, on Monday, November 13. That release did not include the compilation of test results by individual schools or school districts because the department did not receive that data from Harcourt until the following day, November 14. As received by the department, the school and district test result data were encoded on a single CD-ROM.[3,4] On receipt, the department announced its intention to release the results on Tuesday, November 21. The stated purpose of the seven-day delay between receipt and release was to permit the department, district superintendents, and school principals an opportunity to review and correct potential errors in the data compilation.[5,6]

On learning that the department was not going to release the

tests and produce the results. The department chose Harcourt in part because it believed Harcourt would score the tests more accurately and provide the results to the department more expeditiously.

[3] It does not appear that the Globe Newspaper Company (Globe) sought the release of individual student test results and, in any event, those results would likely have been exempt from public disclosure under G. L. c. 4, § 7, Twenty-sixth (*c*).

[4] These results were preliminary; the Department of Education (department) did not receive the final school and district test results from Harcourt until January, 2001.

[5] In previous years, the department, district superintendents, and school principals had identified numerous errors in the results reported by the prior testing contractor. It was therefore reasonable for the department to assume that errors would also exist in the computation of test results for the year 2000, even though, or perhaps additionally because, Harcourt had not been responsible for scoring previous MCAS tests. Moreover, the sheer volume of the testing and the intricacies involved in the scoring and compilation processes make some errors almost inevitable. Accordingly, Harcourt had established a hotline telephone number and maintained a log to record reported errors. The log is fifteen pages long and contains well over one hundred such reports.

[6] The individual superintendents did not receive these test results until November 17. They were received directly from Harcourt, not from the department, and the information they contained was more detailed than that received by the department. Nonetheless, the Globe requested only the test results the department had in its possession, not the results individual district superintendents received.

results until November 21, the Globe filed suit seeking a preliminary injunction requiring the department to release the results immediately. On November 15, a hearing was held on the Globe's motion, which was denied the next day by a judge in the Superior Court. On November 21, the department released the school and district test results. Among the many errors reported to the department by school districts during this period of delay, and corrected prior to the public release of the results, were errors such as: (a) students from an alternative high school being misclassified as attending a regional vocational technical high school; (b) students who took the standard examination being misclassified as taking the alternative examination; and (c) students' scoring data missing entirely and being reported as a zero.

For all practical purposes, the department's release of the results rendered moot any further proceedings in the Superior Court. Nonetheless, because resolution of the issue required the interpretation of G. L. c. 66, § 10, in circumstances capable of repetition in a manner that might again evade review, the judge prudently permitted the matter to proceed. See, e.g., *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973); *Tsongas* v. *Secretary of the Commonwealth*, 362 Mass. 708, 713-714 (1972). See also *Southern Pac. Terminal Co.* v. *ICC*, 219 U.S. 498, 515 (1911). The Globe and the department filed cross motions for summary judgment, and on December 10, 2001, the judge denied the Globe's motion and granted summary judgment for the department. The Globe appealed and we transferred the case to this court on our own motion.

2. *Discussion.* The outcome of this case turns on the proper interpretation of the Commonwealth's public records law. The parties do not dispute that the compiled school and district test results were public records subject to disclosure on request. G. L. c. 4, § 7, Twenty-sixth.[7] What is at issue is a procedural question of first impression: is a seven-day delay in releasing

---

[7]The definitional section of the Public Records Law states as follows: " 'Public Records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division, or authority of the commonwealth, or of any

public records "unreasonable delay" (prohibited by § 10 [*a*]) even though it occurs "within ten days" of a request, as required by § 10 (*b*)?[8]

Section 10 (*a*) requires that "[e]very person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee." Section 10 (*b*) requires that "[a] custodian of a public record shall, within ten days following receipt of such request for inspection or copy of a public record, comply with a request." The parties propose divergent interpretations of these provisions. The Globe posits that public records should be released "without unreasonable delay" in accordance with § 10 (*a*), and that § 10 (*b*) demarcates only a maximum period of delay of ten days.[9] It then argues that because the department possessed

---

political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within [one of twelve] exemptions . . . ." G. L. c. 4, § 7, Twenty-sixth. See 950 Code Mass. Regs. § 32.03 (1993). Clause Twenty-sixth lists the twelve exemptions, none of which applies to these test results.

[8]In this case, the Globe filed its request on November 8, six days before the department had possession of the records in question, in other words, before there were any public records in existence. In this respect, the request was not effective under the public records law until the department received the records on November 14: the ten-day statutory period began to run from that date.

[9]The Globe's position is in accordance with an advisory opinion from the supervisor of records to the commissioner, dated November 14, 2000: "Please be aware that the Department cannot 'schedule' the release of public records. All requests for public records must receive a response as soon as practicable, without unreasonable delay, and always within ten (10) days. . . . The ten-day provision is a maximum, rather than a minimum, time frame for complying with a public records request." We acknowledge that the supervisor's advisory opinion is entitled to a degree of deference. However, in matters of statutory interpretation, that degree of deference is minimal, particularly where the advisory opinion is not the subject of our review. See, e.g., *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield*, 431 Mass. 792, 793, 795-796 (2000) (records exempt from disclosure despite supervisor's contrary advisory opinion); *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 430, 442 (1983) (records exempt from mandatory disclosure despite supervisor's contrary order). See also *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination*, 391 Mass. 594, 600 (1984), quoting *School*

the test results on November 14 in a form (a single CD-ROM) that could readily have been copied and provided to it, the seven-day delay was unreasonable and therefore violative of § 10.[10] The department, on the other hand, contends that § 10 (*a*) and § 10 (*b*) should be interpreted to mean that the release of public records within ten days of a request is presumptively reasonable and that by making the test results available to the Globe within seven days of receiving them, the department fully complied with § 10. The department does not contend that a custodian who complies with a public records request within ten days has, as a matter of law, always acted "without unreasonable delay," and concedes that there might be compelling circumstances in which delayed compliance, even within the ten-day period allowed by § 10 (*b*), could constitute "unreasonable delay." It argues, however, that the requestor bears the burden of establishing the existence of such compelling circumstances and that they are not present in this case. The department's position was in large measure adopted by the motion judge.

In interpreting statutes, "[n]one of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). See *Fluet* v. *McCabe*, 299 Mass. 173, 178 (1938). By looking to the structure of the statute and reading it as a whole so that the paragraphs in question inform one another, the internal tension between the "without unreasonable delay" language of § 10 (*a*) and the "within ten days" language of § 10 (*b*) dissipates.

The first sentence of § 10 (*a*) sets forth the general principle of broad public access to government records, tempered by the

*Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978) ("duty of statutory interpretation is for the courts").

[10]The Globe also contends that, even if the release of records within ten days is "presumptively not 'unreasonable,' " that presumption was rebutted here by its having demonstrated a compelling need to publish the results as soon as they were made available to the department. See *infra*.

standard of reasonableness. Public records are to be made available for examination at government offices not at any time, but at "reasonable times"; public access to such records need not be immediate, but must be afforded "without unreasonable delay"; and the custodian of the records must provide a copy of the record to be examined to the person requesting it but only on the payment of a "reasonable fee." By incorporating the concept of reasonableness into the manner, means, and methods by which the general principle of broad access to public records is to be implemented, the statute implicitly recognizes that it may not always be convenient, practical, or appropriate for the custodian to put aside other equally important or more urgent public business in order to respond immediately to every request for the examination of public records.

What follows the enunciation of the general principle of reasonable access are more specific statutory provisions fleshing out or defining at least some of the particulars respecting its implementation. For example, while fees for providing copies are to be "reasonable," the statute then specifically sets the fees to be charged for copies of records "in the custody of the state police, the Massachusetts bay transportation authority police or any municipal police department or fire department." G. L. c. 66, § 10 (*a*). Similarly, while custodians must provide access to public records without "unreasonable delay," § 10 (*b*) details the particular procedures that must be followed by an individual who wishes to examine or copy public records, and the specific requirement that the custodian comply with a properly submitted request "within ten days" of its receipt. Just as one would conclude from the statutory language read in its entirety that the Legislature has made a specific judgment with respect to what a "reasonable fee" ought to be for a wide array of commonly requested police and fire department records, it would be equally logical to conclude that the Legislature has made a specific judgment that a period of more than ten days would constitute "unreasonable delay" in making public records available for examination and copying.

Sections 10 (*a*) and 10 (*b*) were enacted simultaneously, see St. 1973, c. 1050, § 3, and we presume that the Legislature intended that they be read together so as to "constitute a

consistent and harmonious statutory provision." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000), quoting *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967); *Bolster* v. *Commissioner of Corps. & Taxation, supra* at 84-85; *Fluet* v. *McCabe, supra* at 178.[11] In doing so we interpret them as the Superior Court judge did. Public records must be released for inspection and copying without unreasonable delay, that is, within ten days of the receipt of a request for them. Release within this ten-day period is presumptively reasonable. This presumption may be rebutted by the party requesting the records, but that party bears the burden of showing that a delay of less than ten days is unreasonable. This burden may be satisfied where the requesting party demonstrates a compelling and immediate need for the information requested, outweighing any competing reason for the delay proffered by the custodian.

We are not persuaded by the Globe's argument that any delay, no matter the duration, is presumptively unreasonable under § 10. Such an interpretation would require us to disregard the structure of the statute, so that the general principle in § 10 (*a*) would consume the specific ten-day prescription in § 10 (*b*). Similarly, we reject the Globe's assertion that the custodian of the records should bear the burden of proving the reasonableness of any delay within the ten-day statutory time frame permitted for compliance. The Globe points out that G. L. c. 66, § 10 (*c*), specifically provides that in a court proceeding brought to challenge a custodian's determination that a record is exempt from public disclosure "the burden shall be upon the custodian to prove" that an exemption applies. Thus, it argues, even in the absence of similar statutory language with regard to disputes over the reasonableness of any delay in the release of public records, the same burden ought to rest on the custodian to justify the delay. This turns our ordinary rule regarding the allocation of burdens in litigation on its head. It is precisely because the burden of proof ordinarily falls on the party seeking relief that

---

[11]As enacted in 1973, G. L. c. 66, § 10 (*b*), provided that custodians must comply with a request within twenty days. St. 1973, c. 1050, § 3. This twenty-day period was reduced to ten days in 1976. St. 1976, c. 438, § 2.

the Legislature deemed it necessary to provide otherwise in § 10 (*c*) with respect to the "the dominant purpose of the law [which] is to afford the public broad access to governmental records." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 436 (1983). This purpose would be significantly impaired if the burden were on the individual who has not yet seen the records to prove that those unseen records in the hands of government officials are public records subject to inspection and copying, and to disprove the applicability of any exceptions. We decline to read a similar burden-shifting provision into a portion of the statute concerning the timing of the release of public records, especially where the Legislature has apparently chosen otherwise.

Finally, we agree with the motion judge that the seven-day delay in this case was not "unreasonable." The delay was for the purpose of allowing school officials to conduct a preliminary review of the compiled results to identify compilation errors. Full and fair access to government records does not mean that the department must release raw data or statistical information immediately on receipt from a private contractor, before it can make even a preliminary determination as to whether it is disseminating misinformation that has the potential for public consternation or harm. This does not mean that the department could have withheld the data permanently or delayed their release beyond the ten-day statutory period, even if it had not completed correcting the apparent errors.[12] The department needed to act expeditiously to meet its dual obligations to release accurate information to the schools and communities that were awaiting it, and to comply with the public records law. It appears to have worked diligently to both ends.

In the face of the department's reason for the seven-day delay, the Globe argued that it had a compelling need to publish

---

[12]We need not decide whether a delay beyond ten days would ever be reasonable, but can envision a record request that could not be met within that time frame. At a minimum, in such circumstances, the statute would require release in ten days absent a showing by the custodian that such a release was not possible given the magnitude or difficulty of the request and the other responsibilities of the agency.

a report on the MCAS results a few days sooner.[13] While recognizing that MCAS testing has been an issue of great debate and importance throughout the Commonwealth and that the test results in question constituted a significant news story, we conclude that the Globe's desire to report the results even before they were reviewed for apparent errors in computation is neither compelling nor immediate.

3. *Conclusion.* We affirm the entry of summary judgment for the department.

*So ordered.*

---

[13]The Globe further argues that requiring it to justify its need for the records runs afoul of previous holdings of this court to the effect that any person has the right to examine and copy public records regardless of motive, see *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 64 (1976). While there is no requirement in the statute that a reason or justification is necessary or must be given to access public records (and we do not perceive any other basis for such a requirement), that is not the issue before us. We hold only that a requestor who seeks access to those records sooner than the statute would ordinarily require must demonstrate a compelling need for that expedited access. There is nothing in the statute, its intended purpose, or our case law inconsistent with this requirement.