NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12353

MARY ALICE BOELTER & others[1]  <u>vs</u>.  BOARD OF SELECTMEN OF WAYLAND.


Middlesex.     December 5, 2017. - April 5, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


<u>Open Meeting Law</u>.  <u>Municipal Corporations</u>, Open meetings, Selectmen.  <u>Moot Question</u>.  <u>Attorney General</u>.



<u>C</u><u>ivil action</u> commenced in the Superior Court Department on February 11, 2014.

The case was heard by <u>Dennis J. Curran</u>, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


<u>Mark J. Lanza</u>, Special Town Counsel, for the defendant.
<u>David S. Mackey</u>, Special Assistant Attorney General (<u>Christine M. Zaleski</u> also present) for Massachusetts Gaming Commission.
<u>George H. Harris</u> for the plaintiffs.
The following submitted briefs for amici curiae:

---

[1] Dorothy J. Dunlay; Kent E. George; Stanley U. Robinson, III; and Lois Voltmer.

Maura Healey, Attorney General, & Jonathan Sclarsic & Kevin W. Manganaro, Assistant Attorneys General, for the Attorney General.

Robert J. Ambrogi & Peter J. Caruso for Massachusetts Newspaper Publishers Association.

Kenneth S. Leonetti, Christopher E. Hart, Michael Hoven, & Kelly Caiazzo for Hal Abrams & others.

LENK, J.  The plaintiffs, all registered voters in the town of Wayland (town), brought this action in the Superior Court to challenge the procedure by which the board of selectmen of Wayland (board) conducted the 2012 performance review of the town administrator.  The chair of the board had circulated to all board members, in advance of the public meeting where the town administrator's evaluation was to take place, board members' individual written evaluations, as well as a composite written evaluation, of the town administrator's performance. The board made public all written evaluations after the open meeting.  The issue before us is whether the board violated the Massachusetts open meeting law, G. L. c. 30A, §§ 18 and 20 (a), which generally requires public bodies to make their meetings, including "deliberations," open to the public.

A judge of the Superior Court allowed the plaintiffs' motion for summary judgment, issued a permanent injunction, and declared "stricken" a contrary determination by the Attorney General that had issued the prior year, on essentially the same facts, in which the Attorney General had found that the board's

conduct had not violated the open meeting law.  The board appealed from the allowance of summary judgment, arguing that the matter is moot, its conduct did not violate the open meeting law, and the judge erred in "striking" the Attorney General's separate administrative decision.

We conclude that the judge did not err in declining to dismiss the case on mootness grounds, because the matter is capable of repetition and yet evading review, and is of substantial public importance.  See, e.g., Seney v. Morhy, 467 Mass. 58, 61 (2014).  We conclude further that the procedure the board followed in conducting the town administrator's evaluation did violate the open meeting law.  In making this determination, we consider, for the first time, the meaning of the open meeting law's exemption to the definition of "[d]eliberation," which became effective in July, 2010, that permits members of public bodies to distribute to each other "reports or documents that may be discussed at a meeting, provided that no opinion of a member is expressed."  See St. 2009, c. 28, § 18; G. L. c. 30A, § 18.

We conclude that this exemption was enacted to foster administrative efficiency, but only where such efficiency does not come at the expense of the open meeting law's overarching purpose, transparency in governmental decision-making.  As the individual and composite evaluations of the town administrator

by the board members contained opinions, the circulation of such documents among a quorum prior to the open meeting does not fall within the exemption, and thus constituted a deliberation to which the public did not have access, in violation of the open meeting law. We therefore affirm the judge's decision allowing summary judgment for the plaintiffs on this ground. We agree with the board, however, that the judge erred in "striking" the Attorney General's determination, and vacate that portion of the judge's decision.[2]

1. Background. The material facts are not in dispute. On January 3, 2012, the five-member board held an open meeting during which it reviewed the procedures it intended to follow in conducting the annual performance evaluation of the town administrator. The board agreed that, by the end of the month, its members would submit individual evaluations to the chair, who would compile the evaluations and draft a composite evaluation. The composite evaluation was to be distributed to all board members in advance of the scheduled March 28, 2012, open meeting at which the board planned to discuss the town administrator's performance and issue a final written evaluation. The procedure the board chose to follow was largely

---

[2] We acknowledge the amicus briefs submitted by the Attorney General; the Massachusetts Gaming Commission; the Massachusetts Newspaper Publishers Association; and Hal Abrams, Kim Abrams, and Karen Silva.

consistent with the Attorney General's guidance to public bodies regarding performance evaluations, which was available on the Attorney General's Web site:

> "May the individual evaluations of an employee be aggregated into a comprehensive evaluation?
>
> "Yes.  Members of a public body may individually create evaluations, and then submit them to an individual to aggregate into a master evaluation document to be discussed at an open meeting.  Ideally, members of the public body should submit their evaluations for compilation to someone who is not a member of the public body, for example, an administrative assistant.  If this is not a practical option, then the chair or other designated public body member may compile the evaluations.  However, once the individual evaluations are submitted for aggregation there should be no deliberation among members of the public body regarding the content of the evaluations outside of an open meeting, whether in person or over email."

In accordance with the plan developed at the open meeting, three of the board members submitted written evaluations to the chair.  Two sent the evaluations by electronic mail (e-mail) message, and one hand-delivered her evaluation.  The chair created a composite performance evaluation which included the opinions of those three board members, as well as his own.  The reviews were predominantly positive.  The chair then sent the composite document, along with the three individual performance evaluations, to each board member, by e-mail, as part of an agenda packet for the then-upcoming open meeting.

At the meeting, the board reviewed and discussed the composite evaluation and approved it as final.  The minutes of the meeting simply state that the board "praised [the town administrator] for his availability and responsiveness to the public, his work ethic, his relationship with town staff, and his accessibility to board and committee members."  The composite and individual evaluations subsequently were released to the public.

Approximately two months after the March 28, 2012, open meeting, George Harris, a registered voter in Wayland, filed a complaint with the office of the Attorney General, claiming that the board's procedure for conducting the town administrator's performance evaluation violated the open meeting law.  See G. L. c. 30A, §§ 18, 20 (a).  The open meeting law requires public bodies to make their meetings open to the public, and provide advance notice of such meetings, unless the meeting is an executive session, which can be conducted only for limited reasons.  See G. L. c. 30A, §§ 18, 20.

In January, 2013, the Attorney General responded with a determination letter finding that the board's conduct had not violated the open meeting law; Harris's subsequent request for reconsideration was denied.  As judicial review of an Attorney General's determination in such matters is available only to an

aggrieved public body or member thereof, see G. L. c. 30A,

§ 23 (d), Harris did not appeal from the decision.

In February, 2014, the five plaintiffs in this action, who

are also registered voters in Wayland (and who are represented

by Harris) filed a complaint against the board in the Superior

Court, concerning the same facts. The complaint sought a

declaratory judgment and injunctive relief prohibiting the board

from commencing a "private exchange of opinions in deliberating

the professional competence of an individual prior to an open

meeting." The parties filed cross motions for summary judgment.[3]

The plaintiffs' motion was allowed after a hearing. The

judge concluded that the board had violated the open meeting law

and permanently enjoined it from "deliberating the town

administrator's professional competence by private written

messages before the commencement of a meeting open to the

public." In his decision, although not in the judgment or

amended judgment,[4] the judge also declared that "[t]he opinion

from the Attorney General [d]ivision of [o]pen [g]overnment is

---

[3] In civil actions to enforce the open meeting law, "the burden shall be on the respondent to show by a preponderance of the evidence that the action complained of in such complaint was in accordance with and authorized by the open meeting law." G. L. c. 30A, § 23 (f).

[4] The initial judgment was amended to correct an erroneous statutory reference.

stricken." The board appealed to the Appeals Court, and we transferred the case to this court on our own motion.

2. Discussion. a. Standard of review. We review a decision on a motion for summary judgment de novo, and thus "accord no deference to the decision of the motion judge" (citation omitted). Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 777 (2013). "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012), citing Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

b. Mootness. At first blush, the plaintiffs' claims appear moot, because the evaluation of the town administrator has been completed, and the plaintiffs are no longer able to affect the procedure the board implemented in 2012 in order to ensure compliance with the open meeting law. In addition, the typical remedy for such a violation is public release of the documents at issue, which the board effectuated after the asserted violation.[5] See District Attorney for the N. Dist. v.

_____

[5] The board's mootness argument focuses on the fact that the town administrator, whose performance evaluation was the subject of this action, was terminated in August, 2013. The record is silent as to the reasons for the termination or the outcome of the administrator's other performance evaluations, if any. The plaintiffs, however, are not challenging the outcome of this particular town administrator's performance evaluation, which

School Comm. of Wayland, 455 Mass. 561, 572 (2009) (School Comm. of Wayland).

Nonetheless, dismissal for mootness may be inappropriate if the situation presented is "capable of repetition, yet evading review" (citation omitted). Seney, 467 Mass. at 61. See Globe Newspaper Co. v. Commissioner of Educ., 439 Mass. 124, 127 (2003). "In such circumstances, we do not hesitate to reach the merits of cases that no longer involve a live dispute so as to further the public interest" (citation omitted). Seney, supra. Here, the board's practice is likely to recur; regardless of who is serving as the town administrator, an evaluation must take place every year. Moreover, the practice that the board followed is endorsed by the posted information on the Attorney General's Web site, meaning that other public bodies might follow suit.[6] At the same time, the issue likely would evade judicial review, because of the relatively short window involved in the annual review. See Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975) (matter capable of repetition and yet evading review "because the claim of any named plaintiff is

---

was in fact positive. The town administrator's subsequent termination thus is irrelevant to the mootness determination.

[6] The Attorney General is authorized to interpret and enforce the open meeting law. See G. L. c. 30A, § 23 (a). She also may "promulgate rules and regulations to carry out enforcement of the open meeting law," and "issue written letter rulings or advisory opinions." G. L. c. 30A, § 25.

likely to be mooted by the mere passage of time during the appeal process").

This matter is also of substantial public importance. By challenging the board's procedure, the plaintiffs seek to ensure that all of the town's constituents have access to the decision-making process of their local government whenever a town administrator is evaluated. See School Comm. of Wayland, 455 Mass. at 570 ("It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached" [emphasis in original; citation omitted]). We conclude that the motion judge did not err in declining to dismiss the case for mootness.

c. Open meeting law. General Laws c. 30A, § 20 (a), provides that, with the exception of executive sessions,[7] "all meetings of a public body shall be open to the public."[8] The

---

[7] General Laws c. 30A, § 21 (a), permits a public body to meet in an executive session in ten limited circumstances, none of which is applicable here. Notably, these circumstances include discussion of "the reputation, character, physical condition or mental health, rather than professional competence, of an individual" (emphasis added). See G. L. c. 30A, § 21 (a) (1).

[8] "Except in an emergency, in addition to any notice otherwise required by law, a public body shall post notice of every meeting at least [forty-eight] hours prior to the meeting, excluding Saturdays, Sundays and legal holidays. In an

statute defines a "meeting" as "a deliberation by a public body with respect to any matter within the body's jurisdiction," subject to certain exclusions not relevant here.  G. L. c. 30A, § 18.  A "deliberation," in turn, is defined as "an oral or written communication through any medium, including [e-mail], between or among a quorum of a public body on any public business within its jurisdiction."  Id.

The statute, however, provides an exemption: "'deliberation' shall not include the distribution of a meeting agenda, scheduling information or distribution of other procedural meeting or the distribution of reports or documents that may be discussed at a meeting, provided that no opinion of a member is expressed" (emphasis added).  Id.  The parties dispute whether, in circulating the individual and composite evaluations in advance of the public meeting, the board members' opinions were "expressed" within the meaning of this exemption.

To resolve this dispute, we must "effectuate the intent of the Legislature" (citation omitted).  Koshy v. Sachdev, 477 Mass. 759, 765 (2017).  "We begin with the canon of statutory construction that the primary source of insight into the intent of the Legislature is the language of the statute."  Id. at 766,

emergency, a public body shall post notice as soon as reasonably possible prior to the meeting."  G. L. c. 30A, § 20 (b).

quoting International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983).

As an initial matter, the open meeting law does not provide a meaning for the word "opinion." In ordinary usage, an "opinion" is "a view, judgment, or appraisal formed in the mind about a particular matter." Webster's Third New International Dictionary 1582 (1993). See Boylston v. Commissioner of Revenue, 434 Mass. 398, 405 (2001) ("We usually determine the plain and ordinary meaning of a term by its dictionary definition" [quotation omitted]). The individual and composite evaluations prepared by the board members and shared with the quorum doubtless constituted "appraisals" of the town administrator's performance, and therefore contained board members' opinions. The question, then, is whether the circulation of the individual and composite evaluations containing board members' opinions was permissible since the opinions were not expressed in the body of the chair's e-mail message circulating the evaluations but, rather, in the attachments themselves.

The phrase, "provided that no opinion of a member is expressed," specifically pertains to "reports or documents that may be discussed at a meeting." G. L. c. 30A, § 18. See Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 123 (1986) (general rule of grammatical construction is

that "a modifying clause is confined to the last antecedent" [citation omitted]). The natural reading of the statute is that two categories are carved out of the definition of "deliberation." It is not "deliberation" when the materials distributed to the quorum fall into one of two categories: first, purely procedural or administrative materials (such as agendas) and, second, reports or documents to be discussed at a later meeting, so long as such materials do not express the opinion of a board member.

The board argues that the phrase, "provided that no opinion of a member is expressed," only pertains to the distribution of reports or documents, and not to the reports or documents themselves. In other words, the board believes that the statute permits board members to share their opinions with a quorum provided that the opinions are not expressed in, for example, the body of an e-mail message or in a cover letter, but only in attachments to e-mail messages or documents referred to in a cover letter. This reading would create a loophole that would render the open meeting law toothless. See ENGIE Gas & LNG LLC v. Department of Pub. Utils., 475 Mass. 191, 199 (2016) ("The court does not determine the plain meaning of a statute in isolation but, rather, . . . [considers] the surrounding text, structure, and purpose of the Massachusetts act . . ." [citation and quotations omitted]); Champigny v. Commonwealth, 422 Mass.

249, 251 (1996) (reading of statute that causes it to have "no practical effect" is absurd result, and we "assume the Legislature intended to act reasonably").  If we were to adopt the board's view, the board members permissibly could have conducted an extended communication on any topic without public participation, so long as they styled their opinions as separate reports or documents and delivered them without substantive comment by hand, United States mail, or e-mail messages.  This plainly cannot be what the Legislature intended in adopting the exemption.  See Worcester v. College Hill Props., LLC, 465 Mass. 134, 145 (2013), quoting North Shore Realty Trust v. Commonwealth, 434 Mass. 109, 112 (2001) (statute "should not be so interpreted as to cause absurd or unreasonable results when the language is susceptible of a sensible meaning").

Our reading is consistent with the statute's history. Previously, the open meeting law defined "deliberation" as "a verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction."  See G. L. c. 39, § 23A, as appearing in St. 1975, c. 303, § 3.  In School Comm. of Wayland, 455 Mass. at 570-571, this court clarified that a "private e-mail exchange in order to deliberate the superintendent's professional competence" among Wayland school committee members "violated the letter and spirit of the open meeting law," because

"[g]overnmental bodies may not circumvent the requirements of the open meeting law by conducting deliberations via private messages, whether electronically, in person, over the telephone, or in any other form."  We reasoned that the e-mail communications at issue were not protected, "as we must presume the substance of the written comments would have been stated orally at an open meeting in which the superintendent's professional competence was discussed."  Id. at 571-572.

In the same year that School Comm. of Wayland, supra, was decided, the Legislature broadened the open meeting law's definition of "deliberation," and affirmed that a "deliberation" could encompass "any medium," not just verbal communication. See St. 2009, c. 28, §§ 18, 20, 106 (effective July 1, 2010). At the same time, however, the Legislature amended the open meeting law expressly to allow public bodies to distribute some materials internally in advance of open meetings without triggering the definition of "deliberation"; this change seems to have been a response to the practical realities of local governmental service.  By permitting officials to review certain administrative materials and reports in advance of an open meeting, the Legislature took steps to ensure that the work of those officials at the meetings could be focused and efficient. At the same time, in recognition that the overarching purpose of the open meeting law is to ensure transparency in governmental

decision-making, the Legislature specified that no opinion of a board member could be expressed in any documents circulated to a quorum prior to an open meeting.  See Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 610 (2017) ("the new version of the open meeting law does not alter our belief that '[i]t is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached'" [citation omitted]).  However inefficient this may prove for local bodies in certain circumstances, this is the balance that the Legislature has struck.

The board argues that the Attorney General's interpretation of the open meeting law is entitled to deference and should prevail.  In the determination letter dismissing Harris's complaint, the Attorney General found that the board did not violate the open meeting law because "the [c]hair performed an administrative task exempt from the law's definition of deliberation."  She explained that the chair's "email did no more than distribute a document to be discussed at the [b]oard's meeting that night.  The email did not contain any advocacy by [the chair], and it did not invite comment from other [b]oard members, nor was any comment provided."  She went on to explain that "[a]lthough the document itself may have contained the opinions of [b]oard members, we find compiling evaluations to be

a permissible and necessary function for public bodies to conduct ahead of meetings, so long as discussion of the evaluations occurs during an open meeting."  The Attorney General conceded, however, that because e-mail communication among a quorum of public body members, "however innocent[,] creates at least the appearance of a potential open meeting law violation . . . our best advice continues to be that public bodies not communicate over email at all except for distributing meeting agendas, scheduling meetings and distributing documents created by non-members to be discussed at meetings, which are administrative tasks specifically sanctioned under the open meeting law."

Where, as here, the Attorney General is authorized to interpret a statute, her interpretation is entitled to substantial deference, unless it is inconsistent with the plain language of the statute.  Smith v. Winter Place LLC, 447 Mass. 363, 367-368 (2006).  In this case, the Attorney General's characterization is not supported by the plain meaning of the statute, and therefore is not accorded such deference.  While the Attorney General correctly notes that the e-mail message to the board to which the evaluations were attached did not itself contain advocacy or invite comment, this does not alter the fact that the evaluations themselves contained board members' opinions.  The Attorney General dismisses the fact that the

composite evaluation contained board members' opinions by stating that "compiling evaluations" is a "permissible and necessary function for public bodies," but the chair did not simply compile the evaluations in this case -- he circulated the compiled evaluations to a quorum.  We note also that the Attorney General's determination letter fails to recognize that the chair sent not only the composite evaluation, but also the three individual evaluations, to all board members.

We conclude that the board's conduct violated the open meeting law.  The circulated individual and composite evaluations expressed the opinions of the board members to a quorum in advance of the public meeting.  As the plaintiffs note, the effect of the circulation of the individual and composite evaluations was that all five board members were aware of the opinions of four of the members in advance of the open meeting; thus, the circulation, in effect, constituted a deliberation, or a meeting, to which the public did not have access.  Indeed, the motion judge noted that, after the circulation, and before the open meeting, "it was rather obvious that the die had been cast as to whether the town administrator should be continued in his position."  The open meeting law was intended to ensure that the public is able to see for themselves how such decisions are made.  See Revere, 476 Mass. at 610.  The distribution of the individual and composite opinions to the

quorum, prior to the meeting, was thus a violation of the open meeting law. See G. L. c. 30A, § 18. Compare School Comm. of Wayland, 455 Mass. at 570 ("Open meetings provide an opportunity for each member of the governmental body to debate the issues and disclose their personal viewpoints before the governmental body reaches its decision on a matter of public policy" [emphasis added]); McCrea v. Flaherty, 71 Mass. App. Ct. 637, 641 (2008) (open meeting law "provides for public access to the decision-making process when it is in a formative stage, several steps removed from the eventual result").

The result here would have been different if the board had made the individual and composite evaluations publicly available before the open meeting. For example, the board could have posted the evaluations on its Web site and made paper copies available for inspection at or about the time that the evaluations were circulated among a quorum of board members. Ordinarily, the board is required only to make the minutes of open meetings, along with "the notes, recordings or other materials used in the preparation of such minutes and all documents and exhibits used at the session," available to the public, upon request, within ten days after an open meeting has taken place. G. L. c. 30A, § 22 (c), (e). Nothing in the open meeting law or the public records statute, however, precludes the board from prior disclosure, at least in these

circumstances.[9]  See G. L. c. 4, § 7; G. L. c. 30A, §§ 18-25;
G. L. c. 66, §§ 1 et seq.  If board members wish to circulate
documents containing board member opinions among a quorum in
advance of an open meeting, as here, prior and relatively
contemporaneous public disclosure of those documents, where
permissible, is necessary in order to comply with the open
meeting law and to advance the statute's over-all goal of
promoting transparency in governmental decision-making.

     d.  <u>Striking the Attorney General's decision</u>.  The board
argues that, in his decision granting the plaintiffs' motion for
summary judgment, the judge erred in ruling that "[t]he opinion
from the Attorney General [d]ivision of [o]pen [g]overnment is
stricken."[10]  We agree.  The open meeting law establishes two
separate means by which a party may complain of a violation:  an
aggrieved party may seek administrative remedies, for which

_____

[9] Under the open meeting law, only the following materials
used in open meetings are "exempt from disclosure to the public
as personnel information:  (1) materials used in a performance
evaluation of an individual bearing on his professional
competence, <u>provided they were not created by the members of the
body for the purposes of the evaluation</u>; and (2) materials used
in deliberations about employment or appointment of individuals,
including applications and supporting materials; provided,
however, that any resume submitted by an applicant shall not be
exempt" (emphasis added).  G. L. c. 30A, § 22 (<u>e</u>).

[10] While the judge's decision does not specify which opinion
it purports to strike, in context, it can refer only to the 2013
determination letter dismissing Harris's complaint.  The
plaintiffs do not dispute that the decision to strike was
improper.

judicial review is available only to a government entity that is party to the ruling, or file a registered-voter complaint in the Superior Court, as here.  See G. L. c. 30A, § 23 (b), (d), (f).  To the extent that the judge was attempting to reverse the Attorney General's decision on Harris's administrative complaint, he had no authority to do so.[11]  While Harris's administrative complaint and this action concern the same facts, Harris's complaint was not before the judge.  Nor could it have been, as Harris was not a member of a public body at the time that the complaint was filed.  See G. L. c. 30A, § 23 (d) ("A public body or any member of a body aggrieved by any order issued pursuant to this section [by the Attorney General] may, notwithstanding any general or special law to the contrary, obtain judicial review of the order only through an action in [S]uperior [C]ourt seeking relief in the nature of certiorari").

3. Conclusion.  The judgment is affirmed.  The purported "striking" of the Attorney General's determination at the administrative proceeding is vacated.  The matter is remanded to the Superior Court for such further proceedings as are required.

So ordered.

---

[11] The purported striking was not necessary to ensure uniform resolution of future open meeting law challenges.  The Attorney General has represented that if we affirm the judge's decision, she will amend her guidance and adjust her interpretation of the open meeting law when resolving complaints.