NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-663

KIRBY MASTRANGELO & others[1]

vs.

CITY OF AMESBURY & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs appeal from the entry of summary judgment against them in the Superior Court.  Two counts from the plaintiffs' first amended complaint are at issue:  one alleging that the former mayor of Amesbury, C. Kenneth Gray (mayor), in his individual capacity,[3] intentionally interfered with the plaintiffs' advantageous economic relationship with the Cannabis Control Commission (commission), and the other seeking declaratory and injunctive relief against the mayor and the city of Amesbury.  We affirm.

_____

[1] Candace Kattar and CKR Natural Solutions, LLC (CKR).

[2] C. Kenneth Gray, individually and in his capacity as Mayor of the city of Amesbury, and the Cannabis Control Commission.

[3] The plaintiffs' intentional interference claim against Mayor Gray in his official capacity was previously dismissed and is not before us.

Discussion.  We review a decision on a motion for summary judgment de novo without deference to the motion judge.  Boelter v. Selectmen of Wayland, 479 Mass. 233, 237 (2018).  "Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 332 (2016).  We may consider any ground that supports the judgment.  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

1.  Intentional interference.  The plaintiffs assert two primary claims of error in the motion judge's decision entering summary judgment for the mayor on their intentional interference claim.  First, the plaintiffs argue that the judge erred by applying a heightened actual malice standard to the "improper motive or means" element of the tort of intentional interference with an advantageous economic relationship.  Second, they assert that, even if the actual malice standard applied here, there is sufficient evidence in the record from which a jury could infer that the mayor acted with malice.  The plaintiffs' brief is silent, however, on the alternative ground supporting the motion judge's decision -- i.e., common-law immunity.  See Gildea v. Ellershaw, 363 Mass. 800, 820 (1973).  Accordingly, the issue is waived.  See Abate v. Fremont Inv. & Loan, 470 Mass. 821, 833 (2015) (failure to address issue on appeal waives right to

2

appellate review); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 n.1 (2005) (same).

Even if the issue were not waived, we agree with the motion judge that the mayor is shielded from liability by the common-law immunity doctrine. Under Massachusetts common law, "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." Nelson v. Salem State College, 446 Mass. 525, 537 (2006). The mayor's decision to not enter a host community agreement (HCA)[4] on behalf of the city with CKR and instead request that the plaintiffs first obtain a special permit from the planning board was a discretionary act.[5] See Mederi, Inc. v. Salem, 488 Mass. 60, 66 (2021) ("a municipality

_____

[4] "A host community agreement is an agreement between the prospective marijuana establishment and the host community 'setting forth the conditions to have a marijuana establishment . . . located within the host community.'" CommCan, Inc. v. Mansfield, 488 Mass. 291, 292 n.3 (2021), quoting G. L. c. 94G, § 3 (d). "An applicant must provide the commission with proof of an HCA as part of its application for a license." Mederi, Inc. v. Salem, 488 Mass. 60, 63 (2021), citing 935 Code Mass. Regs. § 500.101(1)(a)(8) (2021).

[5] The commission requires that applications to operate a retail marijuana establishment (RME) include, among other things, certification of an HCA with the host municipality, completion of a community outreach meeting, and a description of plans to ensure compliance with all local codes, ordinances, and bylaws. 935 Code Mass. Regs. § 500.101(1)(a)(8)-(10) (2021).

3

may use its discretion in determining whether to enter into an HCA with a prospective retail establishment").

Here, the mayor submitted affidavits stating he requested the plaintiffs to first obtain a permit from the planning board in response to local opposition to CKR's plans, including opposition from a councilor. The burden then shifted to the plaintiff to show a dispute of material fact as to malice or bad faith. See Godbout v. Cousens, 396 Mass. 254, 261-262 (1985) (discussing shifting burdens of proof on summary judgment). The plaintiffs did not submit any admissible evidence that the mayor harbored any personal hostility or ill will toward the plaintiffs. Also absent from the summary judgment record is evidence that the mayor's decision was motivated by revenge, cf. Cachopa v. Stoughton, 72 Mass. App. Ct. 657, 665 (2008) (no summary judgment on common-law immunity where the plaintiff produced evidence from which a jury could infer that official's conduct motivated by revenge, raising inference of malice), or a "spiteful, malignant purpose, unrelated to [a] legitimate [municipal] interest" (citation omitted), Blackstone v. Cashman, 448 Mass. 255, 263 (2007). Nor has the plaintiff offered evidence to support an inference of bad faith. See Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 25-26 (2018) (bad faith suggests "'a dishonest purpose or some moral obliquity,' a 'conscious doing of wrong,' or a 'breach of a

4

known duty through some motive of interest or ill will'" [citation omitted]).  The plaintiffs' theory that the mayor held them to a different standard because of their economic empowerment (EE) status[6] rests more on conjecture and speculation than rational inferences of probabilities from established facts where, as here, there was opposition to the application, and the mayor simply asked that the planning board review the application.[7]  See Gram v. Liberty Mut. Ins. Co., 384 Mass. 659,

---

[6] "Economic empowerment priority applicants are, broadly speaking, those applicants from communities that have been disproportionately harmed by marijuana law enforcement (particularly Black, Hispanic, and Latino communities)." Mederi, Inc., 488 Mass. at 62, citing 935 Code Mass. Regs. § 500.002 (2021).  "The commission statutorily is required to prioritize such applicants."  Id., citing G. L. c. 94G, § 4 (a 1/2) (iv).  See 935 Code Mass. Regs. § 500.102(2)(a) (2021).

[7] The plaintiffs' argument that the requirement that they obtain a special permit in the first instance put them into an "endless loop" (because they could not obtain a permit without a commission application, they could not submit a commission application without an HCA, and they could not get an HCA without a permit) is unavailing.  The argument is premised on theoretical hurdles based on regulatory interpretation, rather than on a factual record of obstruction.  For example, the record reflects that the plaintiffs did initiate the commission application process, and there is nothing in the record to suggest that the planning board refused to consider the plaintiffs for a special permit due to the absence of a complete commission application.  We have also considered the plaintiffs' argument that the mayor acted unlawfully by entering into an HCA with two other parties in October 2018 before either applicant had received a special permit from the planning board, while requiring the plaintiffs to obtain a special permit in the first instance.  This claim is without merit because no statute, regulation, or city ordinance explicitly states the order in which an RME applicant must obtain a special permit or an HCA. Further, although the statutory and regulatory scheme requires economic empowerment applicants to receive priority review by

5

664 (1981), quoting Alholm v. Wareham, 371 Mass. 621, 627 (1976) ("reasonable inference of malice must . . . be 'based on probabilities rather than possibilities'").  See also South Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. 57, 69 (2002) ("there is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare" [citation omitted]).

At bottom, there is insufficient evidence on this record to justify a trial on whether the mayor acted in bad faith, with malice, or corruptly.  See South Boston Betterment Trust Corp., 438 Mass. at 69.  Summary judgment was properly entered for the mayor on the plaintiffs' intentional interference claim.

2.  Declaratory judgment.  The count for declaratory judgment was also properly dismissed.  At the time of summary judgment, the declaratory judgment count applied only to the city and the mayor, as the commission had been dismissed from the litigation by stipulation of the parties.  With respect to any declaration concerning the city and the mayor, the complaint alleged that the city and/or the mayor violated G. L. c. 94G and "abused their powers" by placing unreasonable obstacles before

_____

the commission, "municipalities, as the de facto gatekeepers to such priority application review, are not required to consider whether any entity seeking to enter an HCA is an economic empowerment priority applicant."  Mederi, Inc., 488 Mass. at 72.

6

the plaintiffs to obtain an HCA and by manipulating the process to preclude them, as EE priority applicants, from obtaining commission approval. Although the complaint alleged that declaratory relief was sought "to secure a determination of the relative rights, duties, status, and legal relationship of the Plaintiffs as EE applicants, the Mayor and/or the City and the [commission]" pursuant to G. L. c. 94G, it did not request any particular declaration.[8] As such, the judge was entirely within his discretion in concluding that the request for declaratory relief was too amorphous to address. See Everett v. Local 1656, Int'l Ass'n of Firefighters, 411 Mass. 361, 369 (1991), citing G. L. c. 231A, § 3 (judge, in his discretion, may decline declaratory relief if it would serve no useful purpose).[9]

Judgment affirmed.

By the Court (Vuono, Sullivan & Singh, JJ.[10]),

Clerk

Entered: April 5, 2023.

---

[8] Within the count for declaratory judgment was a request for injunctive relief; however, all requests for injunctions were against the dismissed party, the commission.

[9] We recognize that the judge dismissed the declaratory judgment count as moot since necessary parties had been dismissed from the litigation and the plaintiffs had no pending application with the city. We may affirm on any ground apparent from the record. See O'Keeffe v. Dwyer & Duddy, P.C., 100 Mass. App. Ct. 671, 676 n.10 (2022).

[10] The panelists are listed in order of seniority.